# UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
Greenville Division

| | |
|---|---|
| **American Humanist Association,** | CA No. _____ |
| **John Doe** and **Jane Doe,** | |
| as parents and next friends of their minor | |
| child, and **Jill Doe**, | |
| | |
| *Plaintiffs,* | |
| | |
| v. | |
| | |
| **Greenville County School District**, | |
| **Burke Royster**, in his individual capacity, and | |
| **Jennifer Gibson**, in her individual capacity, | |
| | |
| *Defendants*. | |

## VERIFIED COMPLAINT

Seeking to protect and vindicate their civil liberties and constitutional rights, including the constitutional mandate of separation of church and state, Plaintiffs state as their complaint against the above-captioned Defendants the following:

### NATURE OF THE CLAIMS

1.     This action arises out of the Defendants' policy, custom and practice of holding public elementary school graduations in Turner Chapel (the "Christian Chapel") at the North Greenville University (the "Christian University"), a Christian school, and including sectarian Christian prayers as part of the official graduation ceremonies. The Defendants' affiliation with and sponsorship, promotion and endorsement of these prayers and this religious setting, and its excessive entanglement with religion, violate the Establishment Clause of the First Amendment of the United States Constitution, as applied to South Carolina by the Fourteenth Amendment.

1

2.      The Plaintiffs seek injunctive and declaratory relief and damages under 42 U.S.C. § 1983 against the Defendants to redress this Establishment Clause violation, together with recovery of attorney's fees and costs under 42 U.S.C. § 1988 (b).

## JURISDICTION AND VENUE

3.      This case arises under the First Amendment to the Constitution of the United States and presents a federal question within this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  The Court has the authority to issue a declaratory judgment under 28 U.S.C. § 2201 and to provide injunctive relief and damages under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65.

4.      Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 (b)(2) because the events giving rise to the Plaintiffs' claims occurred herein.

## PARTIES

5.      The first Plaintiff, the American Humanist Association ("AHA"), is a nonprofit 501(c)(3) organization incorporated in Illinois with a principal place of business at 1777 T Street N.W., Washington, D.C.  AHA is a membership organization, with over 175 chapters and affiliates nationwide and over 20,000 members, including parents in the Greenville County School District (the "School District").  AHA promotes humanism and is dedicated to advancing and preserving separation of church and state and the constitutional rights of humanists, atheists and other freethinkers.  AHA brings this action to assert the First Amendment rights of its members.

6.      The second Plaintiff, Jill Doe, a minor, brings this action by and through her next friends, Jane Doe, her mother, and John Doe, her father (collectively, the "Doe Parents").  Jill

Doe was a fifth grade student at Mountain View Elementary School (the "Elementary School"), a public school within the School District, during the 2012-13 school year.

7.    Jill Doe has been subjected to her Elementary School affiliating itself with, preferring and promoting religion and Christianity specifically. At the official graduation ceremony for her class (the "Graduation"), she was offended, affronted and distressed by the actions of the Elementary School in affiliating itself with and endorsing Christianity.  Jill wants to attend another graduation at a school in the School District as she progresses through the grades but does not want it to be held in a church (or similar religious venue) and/or to include prayer as part of the ceremony.

8.    The third Plaintiff, Jane Doe, brings this action in her capacity as a parent.  Jane Doe is a humanist and is a member of the AHA.  She attended the Graduation and felt alienated and stigmatized by the Elementary School's endorsement of Christianity. She was concerned for her daughter, Jill Doe, and felt that the Elementary School was pressuring her daughter to believe in God and to adopt Christianity.  She also felt that her daughter was coerced into participating in the school-sponsored religious activity.

9.    The fourth Plaintiff, John Doe, brings this action in his capacity as a parent.  John Doe is a humanist and is a member of the AHA. He attended the Graduation and felt alienated and stigmatized by the Elementary School's endorsement of Christianity. He was concerned for his daughter, Jill Doe, and felt that the Elementary School was pressuring his daughter to believe in God and to adopt Christianity. He also felt that his daughter was coerced into participating in the school-sponsored religious activity.

10.    The Doe Parents have other children who attend public schools in the School District.  None of these children have graduated from the fifth grade and if they remain in the

School District schools, they too will attend a fifth grade graduation ceremony in the School District.

11.    The first Defendant is the School District.  The School District operates the public school system in Greenville, South Carolina, including the Elementary School.

12.    The second Defendant is Burke Royster ("Royster"), the Superintendent of the School District at the time of the events described herein.   He is sued in his individual capacity.

13.    The third Defendant is Jennifer Gibson ("Gibson"), the principal of the Elementary School at the time of the events described herein.  She is sued in her individual capacity.

**FACTS**

14.    For the past several years, the Elementary School has held its fifth grade graduation ceremonies on the campus of the Christian University.

15.    The graduation ceremonies are held in the Christian Chapel, which is centrally located in the heart of the campus.

16.    According to the Christian University's website, the Christian Chapel is the site of "regular chapel services," has "eight stained glass windows" and a pipe organ.

17.    The Christian University describes the Christian Chapel as a place where "[m]any students have received Jesus Christ as their personal Lord and Savior," "evangelism" is a focus and "students are exposed to the truth of the gospel of Jesus Christ."

18.    The Christian University is a sectarian institution affiliated with the Southern Baptist Convention.

19.    According to its website, the Christian University describes its philosophy thus: "As a Christian school, North Greenville University must keep the emphasis upon the person and

work of Jesus Christ, the Son of God, who was begotten by the Holy Spirit, born of the virgin Mary, true God and true man who died as the substitutionary atonement for the forgiveness of sin, was resurrected from the dead, and now reigns as the living Lord."

20.    According to the Christian University's website, it is "[a]ffiliated with and committed to the South Carolina Baptist Convention," "provides opportunities for higher education in a Christian atmosphere," promotes "a Christian lifestyle" on campus, emphasizes "spiritual growth" and "Christian service," states clearly that "Christ must be the center of the campus for the purpose of Christian education and Christian character-building," and focuses on creating a "biblically sound, Christ-centered environment."

21.    The Christian University's slogan is "Christ Makes the Difference." A true and accurate image of the university's logo is shown in Exhibit 1.

22.    The Christian University's athletic teams are known as the Crusaders.

23.    The School District has been aware of and has approved of this practice of holding elementary school graduations at the Christian University.

24.    On May 30, 2013, the Elementary School held the Graduation at the Christian University.

25.    The venue on the campus of the University for the Graduation was the Christian Chapel.

26.    The Christian Chapel is a Christian place of worship.

27.    The auditorium of the Christian Chapel includes a Christian cross on the podium.

28.    The stained glass windows in the Christian Chapel depict religious imagery.

29.    During the Graduation events, both the cross and the stained glass were visible to students and other people in attendance.

30.     The Christian University's president, Jimmy Epting, has stated that the Elementary School has been holding its ceremony at the Christian University and in its Chapel for years.

31.     It is possible for the School District to hold its graduation ceremonies in a venue that is free from sectarian or religious iconography.

32.     The School District could hold its graduation ceremonies and similar events in facilities on the campus of any of its public schools, including in a gymnasium, auditorium, cafeteria or football stadium.

33.     For example, the Elementary School has a cafeteria.

34.     The graduation ceremony could be held on the campus of Blue Ridge Middle School, which has a gym.  Blue Ridge Middle School is approximately two miles away from the Elementary School.

35.     The graduation ceremony could be held on the campus of Blue Ridge High School, which is approximately four miles away from the Elementary School.  Blue Ridge High School has a gym and a football stadium.

36.     The School District could hold its graduation ceremonies in a community center auditorium, such as the local Sterling Community Center.

37.     The Christian University is about three miles away from the Elementary School.

38.     The official written program (the "Program") for the Graduation provided for the delivery of two separate "prayers."   A true and accurate picture of this Program is shown in Exhibit 2.

39.     The Program was distributed to parents and other attendees of the Graduation

40.     The Doe Parents received a copy of the Program at the Graduation.

41.     Pursuant to the Program, two separate prayers were in fact delivered during the ceremony.

42.      The first prayer was listed as the second item on the Program.   It followed directly after the "Welcome" by "Ms. Gibson."

43.     The first prayer was delivered by a student named J.S.[1]

44.     Prior to the Graduation, a school official asked J.S. if he would deliver a prayer for the Graduation.

45.     The final prayer, listed on the Program as the "Closing Prayer," was delivered by E.E.

46.     Prior to the Graduation, a school official asked E.E. if she would deliver a prayer for the Graduation.

47.     Both prayers delivered at the Graduation were Christian prayers.

48.     The "Closing Prayer" by E.E. consisted of the following language: "Thank you for coming. Let us pray. Dear Lord, thank you for this day and all your many blessings upon us. Lord, bless each and every one of our teachers, leaders and parents. Lead, guide and direct us as we begin this new adventure into middle school. We give you the praise for all our accomplishments. In Jesus' name I pray. Amen."

49.     The students participating in the Graduation were under the supervision and direction of the Elementary School.

50.     The students were told where to sit and practiced walking to their place.

51.     The students were told that Gibson was going to deliver a speech, and that Mr. Deyo was going to talk about the safety patrol.

52.     The two student speakers were asked to write a prayer.

---

[1] The full names of minors have been redacted to comply with the local rules.

53.    Each prayer was reviewed by a teacher or other school employee prior to the graduation.

54.    Each prayer was approved by a teacher or other school employee.

55.    On June 10, 2013, AHA sent a letter (the "AHA Letter") to the School District informing it that its policy and practice of promoting and sponsoring sectarian graduation ceremonies was unconstitutional.  A true and accurate copy of the AHA Letter is attached as Exhibit 3.

56.    In a letter (the "District Letter") dated June 11, 2013, the School District responded to AHA  through its general counsel, Douglas Webb, stating that it would continue to hold the graduation events at the Christian Chapel. A true and accurate copy of the District Letter is attached as Exhibit 4.

57.    The District Letter admitted that the Graduation was held in the Christian Chapel and that the ceremony included two prayers.

58.    The District Letter did not state that the School District would no longer hold graduation or other school events in the Christian Chapel or in a church.

59.    The District Letter did not state that the School District would no longer allow sectarian prayers at its graduation ceremonies.

60.    The AHA sent a second letter (the "Second AHA Letter") to the Defendants, acting through their counsel, dated June 17, 2013, seeking to clarify the statement made in the District Letter. A true and accurate copy of the Second AHA Letter is attached as Exhibit 5.

61.    The Second AHA Letter explained to the School District's counsel, in part, that the District Letter was "not clear as to whether prayers will be included as part of future graduation ceremonies and other school sponsored events. You say that the 'school will not

*endorse* the use of prayer by students,' but you do not say outright that prayers will not be offered at future events."

62.    The School District responded to the second AHA letter in a letter (the "Second District Letter") dated June 25, 2013. A true and accurate copy of the Second District Letter is attached as Exhibit 6.

63.    The Second District Letter stated that the School District would continue to allow sectarian prayers to be offered as part of its elementary school graduation ceremonies it would not discontinue using the Christian Chapel as the venue for its events.

## CAUSES OF ACTION

64.    All preceding allegations are incorporated herein by reference.

65.    The Defendants' policy and practice of permitting, sponsoring, staging, promoting, endorsing, affiliating itself with, and presenting prayers at school-sponsored events, including graduation ceremonies, violates the Establishment Clause of the First Amendment to the United States Constitution.

66.    The Defendants' policy and practice of holding public school events, including elementary school graduations, in sectarian venues, such as the Christian Chapel, violates the Establishment Clause of the First Amendment to the United States Constitution.

67.    The Defendants acted under color of state law in violating the First Amendment as described herein in violation of 42 U.S.C. § 1983.

68.     Royster, in his individual capacity, knowingly or recklessly violated the Plaintiffs' clearly established constitutional rights by the Graduation in the Christian Chapel and including sectarian prayers as part of the official Graduation ceremony.

69.     Jennifer Gibson, in her individual capacity, knowingly or recklessly violated the Plaintiffs' clearly established constitutional rights by the Graduation in the Christian Chapel and including sectarian prayers as part of the official Graduation ceremony.

**RELIEF SOUGHT**

70.     The Plaintiffs request that this Court grant the following relief:

i.   a declaratory judgment that the Defendants' promotion and endorsement of and affiliation with the sectarian prayers included as part of School District graduation ceremonies violates the Establishment Clause of the First Amendment of the United States Constitution and is a violation of the Plaintiffs' constitutional rights under 42 U.S.C. § 1983;

ii.   a declaratory judgment that the Defendants' policy of holding school-sponsored events, including graduation ceremonies, in sectarian venues, such as the Christian Chapel, violates the Establishment Clause of the First Amendment of the United States Constitution and is a violation of the Plaintiffs' constitutional rights under 42 U.S.C. § 1983;

iii.   a permanent injunction enjoining the Defendants, their successors and any person in active concert with the Defendants from knowingly, intentionally, or negligently allowing: (i) prayers to be delivered as part of any school-sponsored event, including but not limited to graduation ceremonies; and (ii) school-sponsored events, including graduations, to be held in churches, chapels and other places of worship or similar religious venues, including but not limited to the Christian Chapel or other locations on the campus of the Christian University or any other sectarian institution;

iv.   An award to the Plaintiffs of damages from the School District;

v.   An award to the Plaintiffs of punitive damages from Burke Royster in his individual capacity for his knowing or reckless disregard of the Plaintiffs' constitutional rights;

vi.  An award to the Plaintiffs of punitive damages from Jennifer Gibson in her individual capacity for her knowing or reckless disregard of the Plaintiffs' constitutional rights;

vii.  An award to the Plaintiffs of their reasonable costs, disbursements and attorneys' fees as allowed by law from the Defendants pursuant to 42 U.S.C. § 1988; and

viii.  An award of such other and further relief as the court shall deem just.

Respectfully submitted,


s/  Aaron J. Kozloski
Aaron J. Kozloski, Fed. ID No. 9510
Capitol Counsel, LLC
P.O. Box 1996, Lexington, SC 29071
*phone* 803-465-1400 / *facsimile* 888-513-6021
aaron@capitolcounsel.us
*Attorney for the Plaintiffs*

September 11, 2013

Lexington, South Carolina

## VERIFICATION

I, the undersigned Plaintiff, Jill Doe, have read this Verified Complaint and the same is, by my own knowledge and upon information furnished to me, true.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated September 4, 2013.

_____

Jill Doe, by and through her next friends, Jane Doe and John Doe

## **VERIFICATION**

I, the undersigned Plaintiff, Jane Doe, have read this Verified Complaint and the same is, by my own knowledge and upon information furnished to me, true.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated September 4, 2013.


_____

Jane Doe

## **VERIFICATION**

I, the undersigned Plaintiff, John Doe, have read this Verified Complaint and the same is, by my own knowledge and upon information furnished to me, true.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated September 4, 2013.

_____

John Doe

**Exhibit 1**



**Exhibit 2**



*In compliance with Rule 13.4.2 of the Electronic Case Filing Policies and Procedures, the names of minors have been redacted.*

**Exhibit 3**



1777 T Street NW, Washington DC 20009-7125 | T 800.837.3792  202.238.9088 | F 202.238.9003 | legal@americanhumanist.org | www.humanistlegalcenter.org

June 10, 2013

W. Burke Royster
Superintendent
301 E. Camperdown Way
Greenville, SC 29601

Jennifer Gibson
Principal
Mountain View Elementary School
6350 Mountain View Road
Taylors, SC 29687

cc: wroyster@greenville.k12.sc.us; jgibson@greenville.k12.sc.us

**Re:    School Graduation Held in Church and Including Prayers Is Unconstitutional**

The parents of a student at Mountain View Elementary School ("MVS") recently informed us that her child's fifth grade graduation ceremony took place in a church and included prayers as part of the ceremony.  The school's actions were clearly unconstitutional.

The American Humanist Association ("AHA") is a national nonprofit organization with over 20,000 members and 125,000 supporters across the country, including in South Carolina.  The mission of AHA's legal center is to protect one of the most fundamental principles of our democracy: the constitutional mandate requiring separation of church and state.[1]

The Supreme Court has long made clear that the Establishment Clause "erected a wall between church and state" which "must be kept high and impregnable."  *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 18 (1947).  To do so, "the Constitution mandates that the government remain secular, rather than affiliate itself with religious beliefs or institutions."  *County of Allegheny v. ACLU*, 492 U.S. 573, 610 (1989).  The school's practice of holding public school graduations in a church and including prayer as an official part of the ceremony affiliates it with Christianity in violation of these principles.

First, holding a public school graduation (for young and impressionable elementary students, no less) in a place of worship such as a Christian church, adorned with overtly sectarian symbols, is itself unconstitutional.  See *Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 851 (7th Cir. 2012) (en banc) (ruling that holding a public high school graduation in a church violated the Establishment Clause). The Establishment Clause is violated where, as here, "the government directs students to attend [an

---

[1]  The very first sentence of the Bill of Rights mandates that the state be secular: "Congress shall make no law respecting an establishment of religion."  This provision, known as the Establishment Clause, "build[s] a wall of separation between church and State."  *Reynolds v. United States*, 98 U.S. 145, 164 (1878).  The Establishment Clause applies to the states pursuant to the Fourteenth Amendment.  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

1

event in] a pervasively Christian, proselytizing environment." *Id.* at 855.[2]

Second, the prayers included in the graduation ceremony are also unconstitutional. The Supreme Court has made clear that the inclusion of even nonsectarian prayers delivered by private parties as part of a public school graduation ceremony is unconstitutional. See *Lee v. Weisman*, 505 U.S. 577 (1992) (graduation prayers unconstitutional) and *Mellen v. Bunting*, 327 F.3d 355, 376 (4th Cir. 2003) (explaining that the "Establishment Clause plainly forbids public schools from sponsoring an official prayer for young children").[3] In fact, "any kind of prayer [in secondary and elementary schools is] unconstitutional because of the impressionability of children," and therefore the government "is prohibited from sponsoring prayer in its elementary and secondary schools." *Mellen* at 321 n. 4, 366.

Furthermore, it does not matter whether the person delivering the prayer is a school official, the school's chosen speaker or a student. Whenever a prayer is part of "a school-sponsored event . . . the conclusion is inescapable that [it] . . . conveys a message that the school endorses the religious invocation." *Jager v. Douglas County Sch. Dist.*, 862 F.2d 824, 831-32 (11th Cir. 1989) *cert. denied*, 490 U.S. 1090 (1989); see also *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 303 (2000) (student-led prayers preceding school football games violated Establishment Clause). It is sufficient that the MVS *permitted* them to occur at a school-sponsored event such as the graduation.[4]

Because MVS has committed multiple constitutional violations, the school district may be sued in federal court under 42 U.S.C. § 1983, which provides that the court may not only issue an injunction

---

[2] See also *Carlino v. Gloucester City High Sch.*, 57 F. Supp. 2d 1 (D.N.J. 1999), *affirmed* 44 Fed. Appx. 599 (3d Cir. 2002) (principal's significant involvement with a baccalaureate service violated the Establishment Clause); *Spacco v. Bridgewater Sch. Dep't*, 722 F.Supp. 834 (D. Mass. 1989) (students could not attend classes in facilities owned by a church, based in part on the students passing "beneath a large cross" to enter the facility, along with the existence of religious flyers that the students confronted upon entry).

[3] See also *Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806, 816 (5th Cir. 1999), *aff'd* 530 U.S. 290 (2000); *Guidry v. Broussard*, 897 F.2d 181 (5th Cir. 1990); *Nurre v. Whitehead*, 580 F.3d 1087 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 1937 (2010); *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 742 (2009); *Lassonde v. Pleasanton Unified Sch. Dist.*, 320 F.3d 979, 983 (9th Cir. 2003), *cert. denied*, 540 U.S. 817 (2003); *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1104 (9th Cir. 2000), *cert. denied* 532 U.S. 905 (2001) ("allowing the students to engage in sectarian prayer and proselytizing as part of the graduation ceremony would amount to government sponsorship of, and coercion to participate in, particular religious practices."); *ACLU v. Black Horse Pike Regional Bd. of Educ.*, 84 F.3d 1471, 1488 (3d Cir. 1996). See also *Warnock v. Archer*, 443 F.3d 954 (8th Cir. 2006) (affirming a contempt order on school district for violating injunction prohibiting them from orchestrating or supervising prayers at graduation ceremonies); *Workman v. Greenwood Cmty. Sch. Corp.*, 2010 U.S. Dist. LEXIS 42813, *14-15 (S.D. Ind. 2010); *Doe v. Gossage*, 2006 U.S. Dist. LEXIS 34613, *19-20 (W.D. Ky. 2006); *Ashby v. Isle of Wight County Sch. Bd.*, 354 F. Supp. 2d 616 (E.D. Va. 2004); *Deveney v. Bd. of Educ.*, 231 F. Supp. 2d 483, 485-88 (S.D. W. Va. 2002); *Skarin v. Woodbine Cmty. Sch.*, 204 F. Supp. 2d 1195, 1198 (S.D. Iowa 2002) (issuing injunction prohibiting school choir from singing Lord's Prayer at graduation ceremony); *Gearon v. Loudoun County Sch. Bd.*, 844 F. Supp. 1097 (E.D. Va. 1993); *Lundberg v. W. Monona Cmty. Sch. Dist.*, 731 F. Supp. 331, 333 (N.D. Iowa 1989); *Graham v. Central Cmty. Sch. Dist.*, 608 F. Supp. 531 (S.D. Iowa 1985); *Lemke v. Black*, 376 F. Supp. 87, 89-90 (E.D. Wis. 1974); *Committee for Voluntary Prayer v. Wimberly*, 704 A.2d 1199 (D.C. 1997); *Bennett v. Livermore Unified Sch. Dist.*, 193 Cal. App. 3d 1012 (1st Dist. 1987).

[4] See also *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 278 (5th Cir. 1996), *cert. denied*, 519 U.S. 965 (1996) (holding that a school's policy of permitting student-initiated prayer at even non-compulsory school events violated the Establishment Clause); *Hall v. Board of Sch. Comm'rs*, 656 F.2d 999, 1003 (5th Cir. 1981) (school violated the Establishment Clause by "permitting students to conduct morning devotional readings over the school's public address system"); *Meltzer v. Bd. of Pub. Instruction*, 548 F.2d 559, 574 (5th Cir. 1977) *aff'd on reh'g*, 577 F.2d 311 (1978) (en banc), *cert. denied*, 439 U.S. 1090 (1979) (school policy permitting students to read their selections from the Bible over the public address system each morning was unconstitutional).

2

stopping your illegal conduct, but may award damages and require you to pay the plaintiff's attorneys fees and expenses.

If you are interested in avoiding such litigation, please notify us in writing, within two weeks of the date of this letter, that you will no longer hold graduation or other school events in churches or include prayers as part of graduation ceremonies.

Sincerely,

Monica Miller, Esq.
William Burgess, Esq.
American Humanist Association

3

**Exhibit 4**

 **The School District of Greenville County**

R. Douglas Webb
*General Counsel*

June 11, 2013

Monica Miller, Esquire
Appignani Humanist Legal Center
1777 T Street
Washington, DC 20009-7125

RE: Mountain View Elementary School

Dear Ms. Miller:

I am in receipt of your letter dated June 10, 2013. In that letter you expressed two concerns with the awards program held by Mountain View Elementary School on May 30, 2013. Your first concern is the holding of the awards program in the Turner Chapel at North Greenville University. Your second concern centers on the prayer that was given by students during the program.

As you are aware, the analysis as to whether a school district has violated the Establishment Clause requires a fact-sensitive inquiry that should be judged from the unique circumstances of each situation. See Lee v. Weisman, 505 U.S. 577 (1992); Lynch v. Donnelly, 465 U.S. 668 (1984). Mountain View moved their awards program to North Greenville University to provide adequate capacity to ensure student and spectator safety for the event. The Turner Chapel has limited religious iconography on the outside and inside of the building. In addition, the inside of the building is designed as an auditorium as compared to that of a sanctuary. There were no religious materials or literature inside the building during the program. The District can assure you that if it is necessary for Mountain View to use the building in the future, any religious iconography will be removed or covered so that a reasonable observer would not believe that the District is endorsing religion.

With regard to the prayers given at the program by students of Mountain View Elementary School, the District can assure you that the school will not endorse the use of prayer by students at any awards program or school-sponsored event in the future.

The District strives to balance the Establishment Clause with the protected ability for individuals to express private religious speech. I can assure you that the District will continue to monitor school-sponsored activities to ensure that those activities do not

301 Camperdown Way •P.O. Box 2848 Greenville, South Carolina  29601-2848
864-355-8866 • FAX 864-355-8864

20

advance, prefer, promote, or inhibit religion.  Please call me should you wish to discuss this matter further.


Sincerely,

Doug Webb /EW

Doug Webb


DW/ew

c:     Mr. Burke Royster
       Ms. Jennifer Gibson

## Exhibit 5

On 6/17/2013 12:14 PM, Monica Miller wrote:

Hello Mr. Webb,

I recently received your letter dated June 11, 2013. I appreciate the prompt reply. However, I would like to clarify two points.

First, it is unacceptable to hold the graduation ceremony in a church, on the campus of a Christian college, even if particular pieces of religious iconography are covered up. There are numerous alternative secular venues available, including facilities at local public schools, such as a gymnasium or football stadium, or a community center auditorium, such as the Sterling Community Center. The school cannot choose a religious venue simply because it prefers it. The court in *Elmbrook* held that the school violated the Establishment Clause by hosting a high graduation ceremony in a nondenominational Christian church. *Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 844 (7th Cir. 2012). The school selected the church as the venue because the gymnasiums were crowded and overheated. *Id* at 844. Yet the convenience of holding the ceremony in a church could not overcome the Establishment Clause concerns. *Id.*

Furthermore, any attempts to cover up religious iconography would unconstitutionally entangle the state with religion and will prove to be a divisive exercise. In *Elmbrook* the court made clear that the school would violate the Establishment Clause by attempting to cover up the religious iconography as well, noting:

> None of this is to suggest that school officials should have exercised a higher degree of control over the Church's environment, scrubbing it of religious symbols or working to tailor its message to a secular audience. Such a course would have run afoul of *[L]emon's* excessive entanglement prong. See *Bowen v. Kendrick*, 487 U.S. 589, 615-18, 108 S. Ct. 2562, 101 L. Ed. 2d 520 (1988).

*Id.* at 854, n.18.

Second, your letter is not clear as to whether prayers will be included as part of future graduation ceremonies and other school sponsored events. You say that the "school will not *endorse* the use of prayer by students," but you do not say outright that prayers will not be offered at future events. It is unconstitutional to include any prayer at a public school graduation, especially where fifth grade students are involved. Only an announced and enforced policy expressly prohibiting such prayers at future events would resolve this issue.

Please write to me as soon as you receive this message, preferably by e-mail, so that we can determine whether an amicable agreement can be reached without having to go to court.

Thank you for your time,

Monica Miller, Esq.

**Exhibit 6**

 **The School District of Greenville County**

R. Douglas Webb
*General Counsel*

June 25, 2013

Monica Miller, Esquire
Appignani Humanist Legal Center
1777 T Street
Washington, DC 20009-7125

      RE: Mountain View Elementary School

Dear Ms. Miller:

      You recently sent an email requesting clarification of the District's position regarding the use of the chapel at North Greenville University as well as the use of prayer at Mountain View's awards program. As contained in my previous letter to you, the District, if it decides to use Turner Chapel in the future, will ensure that the space used by Mountain View is devoid of religious iconography that would lead a reasonable observer to believe that the District is endorsing religion. As it pertains to the use of prayer by students, the District is committed to not endorsing the use of such prayer by students, and therefore, any prayer given by a student at a school-sponsored event, including an awards program for Mountain View Elementary, will be under different circumstances than that of the May 30, 2013 program. The District, however, will not create a policy that prohibits student-initiated and led prayers at future events as you requested. Such a policy would demonstrate an animus or hostility toward such prayer and private religious speech, which in of itself would violate the First Amendment.

      Given your continued reliance on the *Doe v. Elmbrook School District* decision of the Seventh Circuit Court of Appeals, I believe it is necessary to provide a greater analysis of that case. First, as you are aware, the School District of Greenville is located in the Fourth Circuit, not in the Seventh Circuit. Second, the Court took tremendous efforts to limit its decision in *Elmbrook* to the specific facts of the case by holding that "the ruling should not be construed as a broad statement about the propriety of government use of church owned facilities." *Doe v. Elmbrook School Dist.*, 687 F.3d 840, 843 (7th Cir. 2012). In addition, the Court emphasized that it would "not speculate whether and when the sanctuary of a church, synagogue, or mosque could hold public school ceremonies in a constitutionally appropriate manner." *Id.* Rather, the Court was concerned with the unique circumstances of endorsement and entanglement with religion presented to it in the record. These unique circumstances considered by the Court included, but were not limited to, tables staffed with church members handing out

301 Camperdown Way •P.O. Box 2848 Greenville, South Carolina 29601-2848
864-355-8866 • FAX 864-355-8864

evangelical literature to students, religious banners and posters decorating the walls of the lobby, a large Latin cross fixed to the wall where students were seated at the graduation, and the audience sitting in pews containing Bibles and other religious literature. *Id.* at 846.

The atmosphere of the Turner Chapel was much less religious in nature during the awards program than the church described in *Elmbrook*. The auditorium of the Turner Chapel has limited religious iconography, which includes a small cross on the podium and religious depictions contained in stained glass windows. In addition, students were not exposed to proselytizing or subjected to religious literature. Audience members sat in chairs as compared to pews. North Greenville University is the most convenient location for Mountain View students, staff and parents to assemble for highly attended school-wide programs such as the school's awards program. If the school decides to use Turner Chapel in the future instead of its own facilities or another outside facility, efforts will be made to limit or remove any exposure to religious iconography.

Creating an atmosphere that neither advances nor inhibits religion does not unconstitutionally entangle the state with religion as you suggest. Removing a podium that contains a cross on it for example would be similar in nature to the state action of informing a church that they could not deliver a prayer at a graduation. In fact, the use of a church to hold classes for public school students has been held to be constitutional even when the outside of a church prominently displayed signs stating "Come Pray with Us" and "Jesus Forgives." *Porta v. Klagholz*, 19 F. Supp. 2d 290 (D. NJ. 1998). In that case, the public school's administration also covered a mural of doves as well as a biblical inscription in the church's auditorium during its use. *Id.* at 299. The Court reasoned that the school's policy that "All vestiges of religion will be removed to ensure adherence to the First Amendment" and practices of covering religious iconography did not rise to the level of creating an excessive entanglement with religion. *Id.* at 304.

With regard to a student delivering a prayer or providing a religious message during a school-sponsored event, the District will not prohibit this practice as long as the prayer or message is student-led and initiated and does not create a disturbance to the event. Prohibiting such independent student speech would go beyond showing neutrality toward religion but instead demonstrate an impermissible hostility toward religion. If a student is selected to speak based upon genuinely neutral criteria such as class rank or academic merit, that student should have the same ability to decide to deliver a religious message or prayer as another student has the ability to decide to speak about an inspirational secular book or role model. Any religious speech under that scenario is attributable to the individual student and not to the District. This content and viewpoint neutral position respects student individuality and expression. Your concern regarding the impressionability of elementary age students is not valid since the Supreme Court and the Fourth Circuit have both held that the impressionability of a student is not a relevant consideration if a school is not actually advancing religion. *Good News Club v. Milford*, 533 U.S. 98 (2001); *Child Evangelical Fellowship of Maryland v. Montgomery County Public Schools*, 373 F. 3d 589, 602 (4th Cir. 2004).

The District is committed to neither advancing nor inhibiting religion through its policies and practices of neutrality. The District will continue to monitor events at Mountain View Elementary School as well as at other schools to ensure that these policies and practices are adhered to throughout the District. Please do not hesitate to contact me if you wish to discuss the District's response further.

Sincerely,

Doug Webb

c:    Mr. Burke Royster
      Ms. Jennifer Gibson