IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| American Humanist Association, )<br>John Doe and Jane Doe, )<br>as parents and next friends of their )<br>minor child, Jill Doe, )<br>    ) <br>         Plaintiffs, ) <br>    ) <br>v.    ) <br>    ) <br>Greenville County School District, ) <br>    ) <br>         Defendant. ) <br>_____) | Civil Action No. 6:13-cv-2471-BHH<br><br>**ORDER** |

This matter is before the Court following the Fourth Circuit Court of Appeals' remand of certain issues regarding alleged violations of the Establishment Clause of the First Amendment by Defendant Greenville County School District ("the school district" or "the district").

## BACKGROUND

Plaintiffs American Humanist Association ("AHA") and John and Jane Doe, as parents and next friends of their minor child, Jill Doe, ("the Does") filed this action against the school district on September 11, 2013, seeking injunctive and declaratory relief and damages under 42 U.S.C. § 1983 to redress the district's alleged violations of the Establishment Clause of the First Amendment. Plaintiffs' complaint alleges that AHA is a membership organization working to preserve the separation of church and state, and that the Does are professing humanists and non-theists and members of AHA.

In their complaint, Plaintiffs challenge the school district's practice of holding public elementary school graduations in Turner Chapel, a Christian Chapel at North Greenville

University, which is a Christian institution affiliated with the Southern Baptist Convention, as well as the school district's policy of including sectarian Christian prayers as part of official graduation ceremonies. Specifically, Jill Doe, the daughter of Jane and John Doe, was a fifth grade student at Mountain View Elementary School during the 2012-2013 school year, and on May 30, 2013, the Does attended Jill's fifth-grade graduation ceremony, which was held at Turner Chapel. Turner Chapel usually serves as a place of worship and includes a cross affixed to the podium and various stained glass windows depicting Christian imagery. Also, since at least 1951, Christian prayers have been included in graduation ceremonies at Mountain View Elementary School and at other public schools in the district. During the 2013 ceremony that the Does attended, two students, who had been selected by school officials, delivered Christian prayers, which were specifically listed as prayers on the printed program for the event. Prior to the ceremony, a school official reviewed and approved the content of the prayers.

Following the 2013 Mountain View Elementary School graduation ceremony, AHA sent a letter to the school district expressing concern about school sponsorship of sectarian graduation ceremonies. The school district responded in a letter describing two major changes to its policies regarding school programs. First, the school district revised its religious venue policy, indicating that if a school used a religious venue for future events, it would "ensure that the space . . . is devoid of religious iconography that would lead a reasonable observer to believe that the District is endorsing religion." (ECF No. 1 at 23.) Second, the school district set forth a revised prayer policy, indicating that "any prayer given by a student at a school-sponsored event, including an awards program for Mountain View Elementary, will be under different circumstances than that of the May 30, 2013

program," and further stating:

> With regard to a student delivering a prayer or providing a religious message during a school-sponsored event, the District will not prohibit this practice as long as the prayer or message is student-led and initiated and does not create a disturbance to the event. Prohibiting such independent student speech would go beyond showing neutrality toward religion but instead demonstrate an impermissible hostility toward religion. If a student is selected to speak based upon genuinely neutral criteria such as class rank or academic merit, that student should have the same ability to decide to deliver a religious message or prayer as another student has the ability to decide to speak about an inspirational secular book or role model.

(*Id.* at 23-24.) The letter also indicated that the school district would "continue to monitor events at Mountain View Elementary School as well as at other schools to ensure that these policies and practices are adhered to through the District." (*Id.* at 25.)

Based on these facts, Plaintiffs filed suit seeking damages and requesting a declaratory judgment that the school district's past practices of endorsing prayers at school events (Plaintiffs' past prayer claim) and of holding school events in religious venues (Plaintiffs' past chapel claim) violated the Establishment clause. Plaintiffs also sought a declaration that the school district's revised prayer and religious venue policies are unconstitutional and requested a permanent injunction prohibiting all prayer at school events (Plaintiffs' prospective prayer claim) and barring the use of any religious venue for school events (Plaintiffs' prospective chapel claim).

After the parties filed cross-motions for summary judgment, this Court entered orders granting in part and denying in part the motions. First, with respect to Plaintiffs' past prayer claim, the Court concluded that the school district's practice of including prayer at school events, which involved the selection of students to deliver the prayers and the approval of the content of those prayers, was unconstitutional, and the Court awarded $1

in nominal damages for Plaintiffs' past prayer claim.[1]  (ECF No. 97.)  In awarding nominal damages, the Court did not specifically address the merits of Plaintiffs' past chapel claim, and that claim is now squarely before the Court following the Fourth Circuit's remand.

Next, with respect to Plaintiffs' prospective prayer claim, this Court held in favor of the school district, concluding that the revised policy, which permitted only student-led and student-initiated prayer, was constitutional because it has "no religious purpose or effect and does not improperly entangle the State with religion." (*Id.* at 19.)  Accordingly, this Court declined to grant permanent injunctive relief prohibiting all prayer from future school events in the school district.  The Court also held in favor of the school district on Plaintiffs' prospective chapel claim and denied permanent injunctive relief.  Specifically, the Court concluded that Plaintiffs' prospective chapel claim was moot on the ground that Plaintiffs lacked a reasonable expectation of future injury because the Doe family had moved within the school district during the course of the litigation, and their children's new schools had not previously used religious venues for school events.

The Does moved to Alabama after Plaintiffs appealed this Court's decisions, and as a result, the school district filed a motion to dismiss the appeal as moot.  The Fourth Circuit considered the school district's mootness arguments in connection with Plaintiffs' prospective prayer and prospective chapel claims and ultimately determined that the Does' interest in injunctive relief was moot because the Does' children no longer attended school in Greenville County and would not be subject to injury from implementation of the revised policies.  Therefore, the Fourth Circuit granted the school district's motion to dismiss with

---

[1] The school district did not appeal this holding, and that issue is no longer before the Court.

respect to the prospective prayer and prospective chapel claims brought by the Does. Importantly, however, the Fourth Circuit concluded that AHA may still have an interest in obtaining injunctive relief based on its representation of other AHA members, if AHA could establish representational standing.

With respect to AHA's attempt to establish representational standing, the Fourth Circuit declined to consider supplemental affidavits submitted by AHA, noting that issues of fact arising from those affidavits may require resolution in the first instance. (ECF No. 113 at 15.) Accordingly, the Fourth Circuit vacated and remanded the portion of this Court's judgment addressing the prospective prayer claim and instructed this Court to conduct jurisdictional discovery to determine whether AHA currently maintains standing to pursue the prospective prayer claim based on the interests of other members. The Fourth Circuit also indicated that, if this Court determines that AHA continues to have a live claim, then this Court should consider whether its prior judgment on the prospective prayer claim should be amended in any respect.

Next, however, with respect to Plaintiffs' prospective chapel claim, the Fourth Circuit noted that this Court had not considered the merits of the claim but had determined that the claim was moot because (1) the Doe children no longer were enrolled in or would attend Mountain View Elementary School in the future, and they had moved to schools in the district that had not used Turner Chapel or other religious venues for school events; and (2) Plaintiffs failed to present evidence that the new schools attended by the Doe children were likely to use such religious venues in the future. The Fourth Circuit affirmed these findings and determined that "because at the time of the district court's judgment, AHA had not shown that the Does or any other AHA members were likely to suffer injury from

application of the revised chapel policy, AHA failed to establish standing in the district court to challenge the policy." (*Id.* at 17.) Because AHA was barred from remedying that defect on appeal pursuant to *Summers v. Earth Island Institute*, the Fourth Circuit granted the school district's motion to dismiss AHA's prospective religious venue claim.[2] 555 U.S. 488, 498 (2009).

Following remand, this Court directed the parties to confer and submit a proposed scheduling order including (1) jurisdictional discovery, (2) a briefing schedule for the issue of AHA's continued representational standing, and (3) a briefing schedule for the merits of the past chapel claim. (ECF No. 110.) Subsequently, the parties submitted a consent scheduling order setting a deadline for jurisdictional discovery on the issue of AHA's representational standing and setting a deadline for the parties to submit additional briefs on the issues of (1) representational standing and (2) whether the Court should award nominal damages for Plaintiffs' past chapel claim. (ECF No. 111 at 1.)

## DISCUSSION

### I. Plaintiffs' Past Chapel Claim

As previously mentioned, this Court granted Plaintiffs $1 in nominal damages based on its finding that the school district's practice of including school-endorsed prayers from 1951 through the 2013 Mountain Valley Elementary School graduation was unconstitutional. (ECF No. 97.) *See, e.g.*, *Lee v. Weisman*, 505 U.S. 577, 590 (1992)

---

[2] In *Summers*, the plaintiffs, a group of environmental organizations, were unable to establish standing on behalf of their members in the district court, because they could not demonstrate any particularized harm suffered by an organization member. 555 U.S. at 495. The Supreme Court held that, because the plaintiffs could not "me[et] the challenge to their standing at the time of judgment," the plaintiffs "could not remedy the defect retroactively" by supplementing the record with additional evidence. *Id.* at 495 n.\*.

6

("[O]ur precedents do not permit school officials to assist in composing prayers as an incident to a formal exercise for their students."). In so finding, the Court failed to specifically address Plaintiffs' separate claim for damages based on the school district's past use of sectarian venues like Turner Chapel for graduation ceremonies. However, as the Fourth Circuit determined, "[P]laintiffs continue to have an interest in the outcome of the past chapel claim despite the Does' move to Alabama. The [P]laintiffs' claim for nominal damages based on a prior constitutional violation is not moot because the [P]laintiffs' injury was complete at the time the violation occurred." (ECF No. 113 at 18.) Thus, the Court will now consider whether Plaintiffs are entitled to nominal damages based on the school district's use of Turner Chapel for the 2013 ceremony.

The Establishment Clause of the First Amendment to the Constitution of the United States, made applicable to the actions of state and municipal governments by the Fourteenth Amendment, *Everson v. Bd. of Educ. of Ewing Twp.*, provides that "Congress shall make no law respecting an establishment of religion." 330 U.S. 1, 8 (1947); U.S. Const. amend. I, cl. 1. In *Lemon v. Kurtzman*, the United States Supreme Court enunciated a three-part test to determine whether government action violates the Establishment Clause. 403 U.S. 602 (1971). To pass the *Lemon* test, challenged governmental action must (1) have a secular purpose, (2) have a primary effect that neither advances nor inhibits religion, and (3) not foster an excessive entanglement with religion. *Mellen v. Bunting*, 327 F.3d 355, 372 (4th Cir. 2003). All three prongs of the test must be met for the challenged action to be constitutional. *Koenick v. Felton*, 190 F.3d 259, 265 (4th Cir. 1999) ("If a state action violates even one of these three prongs, that state action

is unconstitutional."). "The touchstone for [the Court's] analysis is the principle that the First Amendment mandates government neutrality between religion and religion, and between religion and nonreligion." *McCreary Cnty., Ky. v. Am. Civil Libs. Union of Ky.*, 545 U.S. 844, 860 (2005) (internal quotations and citations omitted). "Whether a government activity violates the Establishment Clause is 'in large part a legal question to be answered on the basis of judicial interpretation of social facts . . . . Every government practice must be judged in its unique circumstances.'" *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 315 (2000) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 693-94 (1984) (O'Connor, J., concurring)). "In the context of school prayer, though, we must give special consideration, under the principles discussed in *Lee* and *Santa Fe*, to whether a state has coerced religious worship." *Mellen*, 327 F.3d at 371.

Here, Plaintiffs allege that the school district's practice of holding school events in sectarian venues adorned with Christian iconography is manifestly unconstitutional and that the school district's past use of Turner Chapel in 2013 fails all three prongs of the *Lemon* test. In support of their arguments, Plaintiffs rely on *Doe v. Elmbrook School District*, where the Seventh Circuit Court of Appeals found unconstitutional a school district's practice of holding high school graduation ceremonies in a church sanctuary. 687 F.3d 840 (7th Cir. 2012).

In contrast, the school district asserts that its use of Turner Chapel for Mountain View Elementary School's 2013 graduation easily passes the *Lemon* test. According to the school district, it was not motivated by any religious purpose in selecting the chapel as the appropriate venue; rather, it did so because it was convenient for students and parents and was a larger and more comfortable environment than the Mountain View Elementary

8

School cafetorium. In addition, the school district asserts that its use of the chapel satisfies the "primary effect" prong of the *Lemon* test because no reasonable observer would conclude that the school was endorsing particular religious views merely by holding the program in the chapel. The school district also contends that *Elmbrook* is not consistent with Fourth Circuit precedent and that it is distinguishable on the facts because, for example, unlike the facts of this case, the church in *Elmbrook* was staffed with church members handing out evangelical literature to students and their families, and the audience in *Elmbrook* was seated in pews containing Bibles and other religious items. Finally, the school district contends that use of the chapel passes the "no endorsement" prong of the *Lemon* test, and that the coercion test does not apply.

After consideration of the parties' arguments and the record as a whole, the Court concludes, based on the specific facts of this case, that the school district's use of Turner Chapel for Mountain View Elementary School's 2013 graduation violated the Establishment Clause and that Plaintiffs are entitled to $1 in nominal damages based on this claim. As an initial matter, the Court notes that this ruling is limited to the specific facts of this case and should not be construed as a bright line rule regarding a school district's use of a church-owned facility.

First, regardless of the school district's purpose in selecting the chapel for the location of the ceremony, the Court has already determined that the inclusion of two school-endorsed Christian prayers at the ceremony violated Plaintiffs' constitutional rights. The fact that the district chose to hold the ceremony (which included school-endorsed Christian prayers) in a clearly Christian place of worship in the presence of religious iconography, including, among other things, a cross on the podium and eight stained glass

9

windows depicting Christian imagery, only further created a likelihood that observers would perceive the district as endorsing a particular set of religious beliefs. There has been no showing that the chapel was the only available venue for the graduation ceremony, and in view of the overall circumstances of the event, there can be no doubt that the setting in which the ceremony occurred conveyed a message of religious endorsement and created a likelihood that the school-aged children would perceive a link between church and state. *See Lee*, 505 U.S. 577; *Elmbrook*, 687 F.3d at 852-54. Thus, the Court finds that the school district's use of Turner Chapel for the 2013 Mountain View Elementary School fails the second prong of the *Lemon* test. *See Mellen*, 327 F.3d at 374 (discussing the "effect prong" of the *Lemon* test and explaining that it "asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval [of religion]") (quoting *Wallace v. Jaffree*, 472 U.S. 38, 56 n.42 (1985) (internal quotation marks omitted)).

In addition, and for similar reasons, the Court finds that the district's use of Turner Chapel fails the third prong of the *Lemon* test insofar as the district's decision to use a clearly Christian environment to conduct a ceremony where students offered school-endorsed prayers fostered an excessive entanglement with religion. *Cf. Mellen*, 327 F.3d 355 (2003) (finding that VMI's sponsorship of a supper prayer brought the school into conflict with the *Lemon*'s third prong by excessively entangling the school with religious activity).

Finally, while the district is correct that the facts of this case differ in certain respects from the facts of *Elmbrook*, the Court notes that the differences do not all favor the school district. For example, although the school district is correct that no church officials handed

10

out evangelical literature during the Mountain View Elementary School graduation ceremony, as occurred in *Elmbrook*, the ceremony in *Elmbrook* did not include school-endorsed prayers, as occurred here. In addition, the ceremony in *Elmbrook* did not involve elementary school students, who may be even more receptive to endorsed religious messages based on their youth. *See Lee*, 327 F.3d at 371 ("It is undoubtedly true that grade school children are particularly susceptible to pressure from their peers towards conformity.") (internal quotations and citation omitted). Overall, for the foregoing reasons, the Court finds that the district's past use of Turner Chapel ran afoul of the First Amendment's Establishment Clause, and the Court grants nominal damages in the amount of $1 on Plaintiffs' past chapel claim.

## II.     AHA's Standing on the Prospective Prayer Claim

As the Fourth Circuit explained on appeal, a party invoking federal jurisdiction generally bears the burden to establish standing by showing that it suffered an injury that is fairly traceable to the challenged action and that can be redressed by the court's decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Generally, plaintiffs in Establishment Clause cases can establish standing by showing that they are "spiritually affronted as a result of direct and unwelcome contact with alleged religious establishment within their community." *Moss v. Spartanburg Cty. Sch. Dist. Seven*, 683 F.3d 599, 605 (4th Cir. 2012) (citation and quotation marks omitted). Ordinarily an organization can establish standing on behalf of its members, or so-called representational standing, when (1) its members "would have standing to sue in [their] own right;" (2) "the organization seeks to protect interests" consistent with "the organization's purpose;" and (3) "neither the claim asserted nor the relief sought requires the participation

11

of individual members in the lawsuit." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 155 (4th Cir. 2000) (en banc); *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (explaining that an "association must allege that its members, *or any one of them*, are suffering immediate or threatened injury" (emphasis added)).

Here, as previously explained, the Fourth Circuit concluded that AHA may still have an interest in obtaining injunctive relief on the prospective prayer claim based on its representation of other AHA members, if AHA could establish representational standing. In seeking to establish representational standing, AHA submitted supplemental affidavits on appeal, which the Fourth Circuit declined to consider, noting that issues of fact arising from those affidavits may require resolution by this Court. (ECF No. 113 at 15.)

Following remand, AHA again submitted supplemental affidavits as well as copies of programs from more recent graduation ceremonies occurring at various schools in the district. (*See* ECF No. 115-1 through 115-21.) In its supplemental briefing, AHA asserts that it has established each element of the representational standing test because: (1) it has pointed to three members who would have standing to sue in their own right (when only one is required); (2) AHA clearly seeks to protect interests consistent with the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit.

In contrast, the district contends that AHA cannot establish representational standing because it cannot show that an AHA member is under threat of an actual and imminent injury, as opposed to a hypothetical or speculative injury. In addition, the school district argues that AHA cannot establish the third prong of the *Hunt* representational standing analysis because the claim asserted requires the participation of individual members in the

12

lawsuit.

After consideration, the Court finds that AHA continues to have standing to proceed on the prospective prayer claim based on its representation of member parents whose children still attend schools within the school district. First, just as the Fourth Circuit remarked that AHA could have "met a challenge to" standing at the time of the Court's previous judgment because it showed that its members, the Does, would suffer harm based on the revised prayer policy (*see* ECF No. 113 at 14-15), AHA still can meet a challenge to standing by showing that, just like the Does at the time of the Court's previous judgment, other of its members would suffer harm based on the revised prayer policy. Specifically, AHA has offered evidence that members Jeffrey Lamb, Michael Bruccoliere, and J.W. have been members of AHA since before the complaint was filed, and that these members, just like the Does at the time of the Court's previous judgment, have children attending schools that are subject to the district-wide prayer policy and that have included Christian prayers and songs in recent graduation ceremonies, leading to the conclusion that these members are under threat of actual and imminent injury as opposed to a mere hypothetical or speculative injury.[3] (*See* ECF Nos. 115-1, 115-2, and 115-3.) *See Lee*, 505 U.S. at 587 (granting permanent injunctive relief to prevent the inclusion of clergy-led invocations in the form of prayer in graduation ceremonies of city public schools); *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 310-12 (granting injunctive relief to prevent the inclusion of student-led prayer

---

[3] The district cites *Am. Humanist Ass'n v. City of Ocala*, F. Supp. 3d 1265, 1278 (M.D. Fla. 2015), in support of its assertion that AHA lacks standing. In *Ocala*, the district court found that AHA lacked standing to enjoin certain future activity where it complained only of a single past prayer vigil and the record contained no evidence that another prayer vigil was likely to be scheduled. The Court finds *Ocala* easily distinguishable from the facts of this case because the single past prayer vigil complained of in *Ocala* is vastly different from the district's decades-long practice in this case of including prayer at graduation ceremonies–events that occur every year.

invocations before football games at Texas public schools); (*see also* ECF No. 97 at 12 ("Certainly, the plaintiffs have standing to challenge the alleged neutrality of the present policy, as in *Santa Fe*, and the Court must consider the concern.")).

In addition, it is clear that AHA seeks to protect interests consistent with the organization's purpose, and contrary to the school district's arguments otherwise, the Court does not find that either the claim asserted or the relief sought requires the participation of individual members in the lawsuit. As AHA points out, the prospective prayer claim seeks only declaratory and injunctive relief, "the type of relief for which associational standing was originally recognized." *Retail Indus. Leaders Ass'n v. Felder*, 475 F.3d 180, 187 (4th Cir. 2007) (citation omitted). Accordingly, the Court finds that AHA continues to have standing to challenge the school district's revised prayer policy.

Having determined that AHA has standing, the next task for the Court is to determine whether its prior judgment on the prospective prayer claim should be amended in any respect. (*See* ECF No. 113 at 16.) In its prior judgment, the Court concluded:

> The new position of the defendant, here, is both neutral and passive. On its face, it does not invite any prayer or speech, sectarian or otherwise; it cannot be said to be coercive. It prescribes nothing. There is nothing about the new position on graduations that suggests any role whatsoever in the schools attempting to make space available for invocation.

(ECF No. 97 at 11.)

More specifically, in considering the *Lemon* test, this Court previously concluded that the school district's revised prayer policy "is secular insofar as it governs a civil ceremony in graduation and protects the fullest liberties in speech for its participants." (*Id.* at 16.) The Court next concluded that no evidence showed that the district's position conveyed a message of endorsement. (*Id.* at 16-17.) Lastly, the Court concluded that the district was

14

not entangled with religion at all because the revised policy requires and expects no involvement of the schools in any decision of any individual student to include any religious point of view.  (*Id.* at 17.)  Accordingly, the Court denied Plaintiffs' request for an injunction prohibiting all prayer during school events.

While the Court is inclined to agree with several of its earlier conclusions insofar as the revised policy *as written* appears to pass the *Lemon* test, the Court has grave concerns about the constitutionality of the actual practices of the school district and the revised policy *as implemented*, as the record now contains evidence tending to show that the school district continues to endorse certain religious activity.  In other words, despite the district's assertion that religious messages will be permitted at school events only when they are truly student-led and -initiated[4] (and when the students delivering the messages have been selected based on genuinely neutral criteria), the evidence offered by AHA paints a different picture.  For example, according to the affidavits submitted by AHA, even following the school district's revision of its prayer policy, the programs for certain schools' graduation ceremonies ask the audience to stand for particular portions of the ceremonies, which the school district has captioned innocuously as a "welcome," "opening remarks," or "closing remarks," but which merely continue the school district's decades-long practice of including Christian prayers.[5]  (*See, e.g.*, ECF Nos. 115-18 at 3; 115-12 at 3; and 115-

---

[4] As previously set forth, the school district informed AHA of the revision to its prayer policy by stating: "With regard to a student delivering a prayer or providing a religious message during a school-sponsored event, the District will not prohibit the practice as long as the prayer or message is student-led and initiated and does not create a disturbance to the event."  (ECF No. 1 at 24.)

[5] As the Supreme Court remarked in *Lee*:

The undeniable fact is that the school district's supervision and control of a high school graduation ceremony places public pressure, as well as peer pressure, on attending students

13.) One school's program dated May 27, 2015, includes an "invocation," despite the fact that the Court's order dated May 18, 2015, stated that "[n]o formal or sponsored 'invocation' or 'inspirational reading' is allowed under the new policy or the prospective instruction of this Order." (ECF Nos. 115-11 at 13 and 97 at 15.) In addition, according to the affidavit of Jeffrey Lamb, a former teacher in the school district, district officials who oversee the speakers at graduation "make it clear to students that prayer is allowed." (ECF No. 115-2 at 3.) Even leaving aside the question of the constitutionality of wholly student-led and -initiated prayers, the evidence submitted by AHA also indicates that the school district endorses other religious messages at its graduation ceremonies. As one example, according to Lamb's affidavit, his daughter is a student at Wade Hampton High School, and at Wade Hampton's 2015 and 2016 graduation ceremonies, the school choir performed the song, "The Lord Bless You and Keep You." (ECF No. 115-2.) *See Skarin v. Woodbine Cmty. Sch. Dist.*, 204 F. Supp. 2d 1195, 1197 (S.D. Iowa 2002) (enjoining the singing of the Lord's Prayer by the Woodbine High School choir at a graduation ceremony as violative

---

> to stand as a group or, at least, maintain respectful silence during the invocation and benediction. This pressure, though subtle and indirect, can be as real as any overt compulsion. Of course, in our culture standing or remaining silent can signify adherence to a view or simple respect for the views of others. And no doubt some persons who have no desire to join a prayer have little objection to standing as a sign of respect for those who do. But for the dissenter of high school age, who has a reasonable perception that she is being forced by the State to pray in a manner her conscience will not allow, the injury is no less real.
>
> . . .
>
> The injury caused by the government's action, . . . , is that the State, in a school setting, in effect required participation in a religious exercise. It is, we concede, a brief exercise during which the individual can concentrate on joining its message, meditate on her own religion, or let her mind wander. But the embarrassment and the intrusion of the religious exercise cannot be refuted by arguing that these prayers, and similar ones to be said in the future, are of a *de minimis* character.

505 U.S. at 593.

of the Establishment Clause).

As the Court remarked in its prior order, "because of the historical inclusion of prayer and religious speech at graduations, in this school district and State, it is conceivable that the cultural residue of prior practices might continue to color and confuse the application [ ] of, even now, constitutionally neutral practices." (ECF No. 97 at 9.) Based on the evidence submitted by AHA, it appears that the historical practices of the school district are, in fact, continuing to color and confuse the application of what appears to be a constitutionally neutral prayer policy, but what, in practice, may not be. *See Doe v. Pittsylvania Cnty.*, 842 F. Supp. 2d 906, 926 (W.D. Va. 2012) (noting that "the mere passage of a resolution . . . cannot immunize the body from constitutional challenge where its actual practice fails to meet the standard set forth in its resolution"); *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 315 ("The District, nevertheless, asks us to pretend that we do not recognize what every Santa Fe High School student understands clearly–that this policy is about prayer . . . . We refuse to turn a blind eye to the context in which this policy arose, and that context quells any doubt that this policy was implemented with the purpose of endorsing school prayer.").

Ultimately, the Court notes that almost three years have passed since the parties' filed their motions for summary judgment on the prospective prayer claim. Moreover, the Court notes that following remand from the Fourth Circuit, the parties have not had the opportunity to fully brief the issue of whether the Court should amend its prior judgment on the prospective prayer policy because the prior scheduling order asked the parties to brief only the issues of (1) representational standing and (2) whether the Court should award nominal damages for Plaintiffs' past chapel claim. (ECF No. 111 at 1.)

In an effort to create a complete record, and because three years is a long time with respect to the legal and factual development of the issues presented, before the Court decides to amend its prior judgment on the prospective prayer policy in any respect, the Court will grant the parties additional time to submit supplemental briefs, as well as any necessary evidentiary support, on the specific issues of (1) whether the Court should amend its prior judgment on the prospective prayer policy, and (2) if so, how the Court should do so.  Before the parties submit their briefs, however, the Court believes that mediation of these issues may be beneficial.  Therefore, the Court orders that the parties submit to mediation pursuant to Local Civil Rules 16.03-16.11 (D.S.C.) within the next sixty days.[6]  In sitting down together, the Court strongly urges the parties to consider whether any additional revisions to the school district's prayer policy and/or practices (to which the school district is willing to agree) may resolve any of the issues before the Court.  *See*, *e.g.*, *Schultz v. Medina Valley Indep. Sch. Dist.*, 2012 WL 517518 (W.D. Tex. Feb. 9, 2012) (setting forth the terms of a settlement agreement in a case involving disagreement about the contours of the Establishment Clause as it relates to prayer in public school, including the issue of prayer at public school graduation ceremonies).

## **CONCLUSION**

For the foregoing reasons, the Court (1) grants Plaintiffs nominal damages in the amount of $1 on the past chapel claim; (2) finds that AHA currently maintains standing to pursue the prospective prayer claim; and (3) orders that the parties submit to mediation within sixty days.  If mediation does not prove fruitful, then the Court will set scheduling

---

[6] The parties may request additional time to conduct mediation if necessary.

deadlines for the filing of supplemental briefs on the issues of whether the Court should amend its prior judgment on the prospective prayer claim and, if so, how the Court should do so.

**AND IT IS SO ORDERED.**

       /s/Bruce H. Hendricks
       The Honorable Bruce H. Hendricks
       United States District Judge

December 12, 2017
Greenville, South Carolina