**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| American Humanist Association, et al. | Case No. 6:13-cv-2471-BHH |
| *Plaintiffs,* | |
| v. | |
| Greenville County School District, | |
| *Defendants*. | |

**PLAINTIFFS' VERIFIED MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES WITH INCORPORATED MEMORANDUM IN SUPPORT**

Plaintiffs American Humanist Association ("AHA"), John Doe, and Jane Doe (collectively, "Plaintiffs") as prevailing parties and in accordance with Local Rules 54.02 and 54.03, request that this Court award them attorneys' fees, including other litigation costs and expenses, against Defendant Greenville County School District (or "Defendant") as part of the costs of this action pursuant to 42 U.S.C. § 1988. As reasons therefor, Plaintiffs state:

**STATEMENT OF THE CASE AND OF THE CLAIMS**

Plaintiffs initiated this action on September 11, 2013 against Greenville County School District ("GCSD") alleging violations of the Establishment Clause of the First Amendment of the United States Constitution, as applied to South Carolina by the Fourteenth Amendment. (Doc. 1). Plaintiffs sought injunctive and declaratory relief and nominal damages under 42 U.S.C. §1983, together with recovery of attorney's fees and costs under 42 U.S.C. §1988(b). (Doc. 1). Plaintiffs challenged two separate practices of GCSD: (1) GCSD's longstanding practice of endorsing prayer in graduation ceremonies ("Prayer Policy"); and (2) GCSD's practice of holding elementary school graduations and other school events in a proselytizing Christian environment ("Chapel Policy").

Following two successful appeals to the Fourth Circuit Court of Appeals, and a series of supplemental briefing and discovery on both remands, Plaintiffs ultimately prevailed on both claims. A summary of the relevant procedural history follows. [1]

After filing suit, Plaintiffs filed a motion for preliminary injunction (Doc. 5) and motion for the Does to proceed anonymously. (Doc.6). [2] The Court denied both motions. (Doc. 26).

On December 12, Plaintiffs appealed. (Doc. 29). On May 16, 2014, the Fourth Circuit vacated and remanded and granted Plaintiffs' motion for a judicial reassignment. (Docs. 51-52). On June 9, the case was reassigned to Judge Lewis (Doc. 54), who directed the parties to brief whether "Plaintiffs' claims for injunctive and declaratory relief are now moot." (Doc. 55). On June 21, Plaintiffs filed a memorandum demonstrating that their claims were not moot. (Docs. 56-61). Shortly thereafter, the case was reassigned to Judge Hendricks. (Doc. 63).

On June 12, Plaintiffs propounded discovery requests on GCSD. (Doc. 84-7). GCSD refused to respond to most of the requests. (*Id.*). On August 17, Plaintiffs filed a Motion to Determine Sufficiency of Defendant's Responses. (Doc. 74). On August 25, the Court held a telephonic conference and advised GCSD to respond to Plaintiffs' narrowed discovery requests. (*Id.*).

On February 4, 2015, Plaintiffs filed their Motion for Summary Judgment against the Prayer Policy and the Chapel Policy. (Doc. 84). On February 18, the magistrate judge recommended "that Plaintiffs' motion for a preliminary injunction be denied with respect to Defendants' use of Turner Chapel." (Doc. 86). The magistrate held the Prayer Policy moot. (*Id.*).

---

[1] The lengthy procedural history of this case is set forth in greater detail in the Court's prior orders and in the Fourth Circuit's opinion. (*See* Docs. 96, 97, 108, 113, and 121).
[2] On December 3, 2013, the court (Judge Anderson) held a hearing at which he called the uncontroverted pleadings "slanderous per se" and accused Plaintiffs of making "wild allegations." (Doc. 32, Trans.11-12¶¶24-25; 21¶9).

On February 23, Plaintiffs timely filed their objections. (Doc. 87). On March 13, GCSD filed its Cross-Motion for Summary Judgment. (Doc. 89). On March 19, 2015, the Court affirmed the denial of the preliminary injunction but only on the basis that the Court would be issuing a ruling on the merits shortly thereafter. (Doc. 90).

The Court bifurcated the summary judgment claims. (Doc. 96). On May 11, 2015, this Court ruled that all of Plaintiffs' claims for relief against the Chapel Policy were moot on the ground that the Doe family had moved within the school district during the course of the litigation, and their children's new schools had not previously used religious venues for school events. (Doc. 96, at 6). On May 18, 2015, the Court ruled in favor of Plaintiffs on their claim for nominal damages against the Prayer Policy in effect from 1951 through 2013. The Court concluded that GCSD's past prayer practice violated the Establishment Clause and awarded Plaintiffs $1. (Doc. 97). With respect to Plaintiffs' prospective prayer claim, this Court ruled in favor of GCSD, declaring: "The defendant[']s new position on prayer at graduations … is not enjoined, and the plaintiff[s'] motion, as to it, is DENIED. The defendants motion for summary judgment is, likewise … GRANTED[.]" (Doc. 97). Plaintiffs appealed the decision (Doc. 99), and presented oral arguments before the Fourth Circuit on May 10, 2016.

While the case was pending appeal, the Doe plaintiffs moved to Alabama. (No. 15-1574, Doc. 27-2). GCSD filed a Motion to Dismiss the case in the Fourth Circuit. (No. 15-1574, Doc. 27-1).

At issue on appeal was, *inter alia*: "(2) Whether: (a) holding elementary school graduations and holiday concerts in a proselytizing Christian chapel at a Christian university violates the Establishment Clause; and if so, whether the court erred in: (b) refusing to award nominal damages; and (c) holding plaintiffs' nominal damages claim moot." (No. 15-1574, Doc. 20 at 2).

3

On June 21, 2016, the Fourth Circuit ruled in Plaintiffs' favor and vacated and remanded the case back to this Court. The court specifically held that the Does had standing to seek nominal damages for the Chapel Policy and found that the Court erred in failing to address that claim. The Fourth Circuit reversed the judgment and remanded for consideration in the first instance. (Docs. 58; 59-1). As to the Prayer Policy, the Fourth Circuit instructed this Court to determine whether AHA had standing to seek prospective relief against the prayer policy, and if standing was found, to reconsider its prior ruling in upholding the practice (Doc. 58).

Following remand, this Court directed the parties to brief the issue of AHA's continued representational standing and the merits of the past chapel claim. (Doc. 110.) Subsequently, the parties submitted a consent scheduling order setting a deadline for jurisdictional discovery on the issue of AHA's representational standing and setting a deadline for the parties to submit additional briefs on the issues. (Doc. 111 at 1.)

After discovery and supplemental briefing, the Court issued an order on December 12, 2017, ruling in Plaintiffs' favor on their claim for nominal damages against the Chapel Policy. (Docs. 121 & 123). The Court determined that "the school district's use of Turner Chapel for Mountain View Elementary School's 2013 graduation violated the Establishment Clause and that Plaintiffs are entitled to $1 in nominal damages." (Doc. 121 at 9). The Court also determined that AHA continued to have standing to proceed on the prospective prayer claim. (Doc. 121 at 13).

The Court considered whether its prior decision on the prospective prayer claim should be amended but determined that, based on the amount of time that had passed, the parties should be permitted additional time to submit supplemental briefs and additional evidentiary support. The Court also ordered the parties to submit to mediation to determine whether additional revisions to the school district's prayer policy and/or practices may resolve the issues before the Court. (*Id.* at

18.) When the parties' attempt at mediation proved unsuccessful, the parties filed their supplemental briefs and additional evidentiary support addressing the outstanding prayer issue (Doc. 135).

On December 12, 2017 (the day of the Order), Plaintiffs filed an unopposed Motion seeking an extension for the deadline to file Plaintiffs' Attorneys' Fee Petition until "at least two weeks after the prayer policy claim is finally resolved." (Doc. 124). The Court granted the motion on December 13, 2017. (Doc. 125).

In its July 18, 2019 Order, this Court ruled in favor of Plaintiffs on the prospective prayer claim and issued a permanent injunction in Plaintiffs' favor. (Doc. 143). The Court determined that GCSD's actions have continued to violate the Establishment Clause and thus granted summary judgment to Plaintiffs on this claim. (Doc. 143).

## ARGUMENT

### I.      As prevailing parties, Plaintiffs are entitled to attorneys' fees.

42 U.S.C. § 1988 entitles a prevailing plaintiff to a reasonable attorney-fee award. *See, e.g., Mercer v. Duke Univ.*, 401 F.3d 199, 202 (4th Cir. 2005); *Daly v. Hill*, 790 F.2d 1071, 1076-77 (4th Cir. 1986). The Fourth Circuit has emphasized the particular importance of awarding fees in civil rights cases such as this:

> "Congress enacted [Section] 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) (citations omitted). Congress attributed this market failure in part to the fact that "[t]hese victims ordinarily cannot afford to purchase legal services at the rates set by the private market." *Id.* (citations omitted).

> Crucially for this case, . . . "*awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if [f]ederal civil and constitutional rights are to be adequately protected.*' House Report, at 9." *Id.* (quotation marks and citation omitted). . . .

*Lefemine v. Wideman*, 758 F.3d 551, 555 (4th Cir. 2014) (emphasis added).[3]

There is no question that Plaintiffs here are the prevailing party. A prevailing party is one that obtains "at least some relief on the merits of his claim." *Farrar v. Hobby,* 506 U.S. 103, 111 (1992). Any relief, even nominal damages, satisfies the requirement for prevailing party status. *Id*; *See Mercer*, 401 F.3d at 203 ("'[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.' That standard is satisfied by a 'judgment for damages in any amount, whether compensatory or nominal.' Thus, there is no doubt that the award of nominal damages suffices to make Mercer a prevailing party within the meaning of section 1988(b).") (internal citations omitted); *see also Doe v. Kidd*, 419 Fed. Appx. 411, 419-420 (4th Cir. 2011) ("Because we now reverse the district court, and direct it to grant summary judgment in her favor, there can be no question that Doe is the 'prevailing party' for purposes of § 1988. She is therefore entitled to reasonable attorney's fees as determined by the district court."); *Clark v. Sims*, 28 F.3d 420, 424 (4th Cir. 1994).

As discussed above, Plaintiffs succeeded on both challenges at issue in this case. This Court determined that both the Chapel Policy and Prayer Policy violate the Establishment Clause. The Court granted summary judgment to Plaintiffs on their claims for nominal damages and prospective relief against the Prayer Policy, and granted summary judgment to Plaintiffs on their claim for nominal damages as to the Chapel Policy. Thus, Plaintiffs are unequivocally entitled to their attorneys' fees under 42 U.S.C. § 1988.

## II.    AMOUNT OF FEES TO BE AWARDED

---

[3] It bears emphasis that the fees awarded to AHA's counsel go directly to AHA's legal center to support future *pro bono* civil rights cases. AHA's attorneys do not profit from litigation.

The starting point to determine whether attorney's fees are reasonable is to calculate the "lodestar," or "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983). *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). This does not, however, "end the inquiry." *Hensley*, 461 U.S. at 433. "There remain other considerations that may lead the district court to adjust the fee upward or downward." *Id.* Once the court has calculated the lodestar, it may adjust the fee award by applying a number of factors. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). These factors are described by the Fourth Circuit as follows:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F. 3d at 243-44 (internal quotations and citations omitted).[4]

The attached Declarations of counsel submitted herewith establish the time expended by each counsel in this litigation. Based upon these factors (discussed below), Plaintiffs are entitled to an award of their full time expended at those rates, if not an upward adjustment of those rates, *infra*.

## 1.  Time and Labor Expended

The time spent by counsel was reasonable and necessary under the circumstances of this case, which took over five years to resolve. There have been two appeals to the Fourth Circuit,

---

[4] These factors are also known as the "*Johnson* factors" (from *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)), which were adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc*., 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934 (1978); *See Daly v. Hill*, 790 F.2d 1071, 1075 (4th Cir. 1986).

several judicial assignments, numerous procedural motions, motions for summary judgment, a mid-appeal motion to dismiss, protracted supplemental briefing on remand, and multiple rounds of discovery.

Indeed, a significant portion of Plaintiffs' time involved gathering information that GCSD refused to disclose. Plaintiffs' fact-gathering was also complicated by the fact that GCSD continued to engage in unconstitutional prayer activities throughout the case, requiring Plaintiffs to constantly re-update the record with new evidence. And because GCSD was unwilling to volunteer this information, Plaintiffs had to rely on multiple witnesses to provide evidence rather than on GCSD. "Those who elect a militant defense are responsible for the time and effort they extract from their opponents. A party cannot litigate tenaciously and then complain about the time spent by the opposing party in response." *Imgarten v. Bellboy Corp.,* 383 F. Supp. 2d 825 (D. Md. 2005) (footnote omitted).

The AHA is a nonprofit organization that staffs two attorneys who manage a caseload of over ten federal cases with no support staff.[5] These attorneys have had to be as efficient as possible in managing their time and caseload, and their time records reflect this.

Local counsel is a solo practitioner with a full caseload whose practice likewise required efficiency in managing his time and caseload, and in keeping hours to a minimum in this case, especially given the length of time involved between filing this case and prevailing in 2019.

## 2. Novelty and Difficulty of the Questions Raised

Establishment Clause cases are by their very nature, complex. "Today's case is no exception to [the] oft-repeated statement that the Establishment Clause presents especially difficult questions of interpretation and application." *Mueller v. Allen*, 463 U.S. 388, 392 (1983). "'[T]he

---

[5] AHA did hire a paralegal, Isabelle Oldfield, near the end of this case in 2017.

Establishment Clause presents especially difficult questions of interpretation and application.'" *C.F. v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 988 (9th Cir. 2011) (citation omitted). *See also Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971); *C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1200 n.20 (C.D. Cal. 2009) (observing the "complexity of Establishment Clause jurisprudence"); *Robinson v. City of Edmond*, 160 F.3d 1275, 1282 (10th Cir. 1998) ("the Establishment Clause [is] an area notorious for its difficult case law"); *Oxford v. Beaumont Indep. Sch. Dist.*, No. 196-CV-706, 2002 WL 34188379 (E.D. Tex. Dec. 19, 2002) ("These hours were necessary because the case involved complex constitutional law issues").

Moreover, discovery was necessary to flesh out facts that should have been admitted, and GCSD's refusal to admit those facts increased the burden on Plaintiffs' counsel.

GCSD's continued violation of the Establishment Clause also contributed to an increase in Plaintiffs' time. This case required "considerable effort" from Plaintiffs' counsel which "was made necessary because of the recalcitrance on the part of [] officials who were more interested in" continuing their unconstitutional traditions "than in complying with federal" law. *Dotson v. City of Indianola, Miss.*, 639 F. Supp. 1056, 1062 (N.D. Miss. 1986).

### 3. Skill Required

Plaintiffs' attorneys in this case are highly skilled in this complex area of constitutional law, and Establishment Clause law specifically, *infra.* Monica Miller and David Niose are very active in First Amendment litigation nationwide. (*See* Declarations of Monica Miller, David Niose). *See also M.B. v. Rankin Cty. Sch. Dist.*, No. 3:13-CV-00241-CWR-FKB, 2016 U.S. Dist. LEXIS 34717, at *14-17 (S.D. Miss. Mar. 17, 2016) ("it is undisputed that Ms. Miller and Mr. Niose brought specialized expertise in litigating First Amendment cases"); *Am. Humanist Ass'n v. Baxter Cty.*, No. 3:14-CV-3126, 2016 U.S. Dist. LEXIS 14371, at *5 (W.D. Ark. Feb. 5, 2016)

(observing that Ms. Miller has "a level of expertise and experience in the complicated areas of Establishment Clause and civil rights enforcement litigation that is *unusually high*" for "her number of years in practice.") (emphasis added). The experience and skill of the attorneys involved were influential in achieving the desired results for Plaintiffs in this matter.

   Local counsel has extensive experience in civil rights and other cases with constitutional implications. (See Kozloski Decl.).

   The skills required of counsel weighs in favor of increasing the amount awarded. *See Gregg v. Ham*, No. 3:08-4040-CMC,  2010 WL 5060583, at *4 (D. S.C. Dec. 6, 2010) (finding that the high level of skill, experience, and expertise of local partner William Hopkins, along with the limited community for § 1983 civil rights litigation in South Carolina, justified higher awards of attorneys' fees);

### 4. Opportunity Costs in Pressing the Instant Litigation

   AHA's legal center is a two-lawyer operation. It consists of a legal director, David A. Niose, and a senior counsel, Monica L. Miller. It recently hired a paralegal but otherwise has no support staff. As such, it must limit the number of cases it takes. It receives numerous viable complaints on a weekly basis but due to limited resources, has to turn many clients away. "Priority work that delays the lawyer's other legal work is entitled to some premium." *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir. 1974) ("This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest . . . and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes").

### 5. Customary Fee for Like Work

The hourly rates requested in this case[6] are reasonable and well within the prevailing rates of lawyers of comparable experience in the Greenville area.   AHA attorneys do not have "standard" rates because they represent clients on a *pro bono* basis in all cases.

Ms. Miller has been awarded fees with rates ranging from $200-$350 in other Establishment Clause cases in regions including in Joplin, Missouri ($300 for work performed in 2016-2017), Rankin, Mississippi ($225 for work performed 2015-2016), Baxter County, Arkansas ($200 for work performed 2014-2015), Lake Elsinore, California ($300 for work performed 2012-2014), Raleigh, North Carolina ($189- $210 for work performed in 2015-2018, reflecting fee cap under the PLRA), and Carroll County, Maryland ($225- $350 for work performed between 2013-2019, pending final approval). (Miller Decl. ¶20).

Mr. Niose has been awarded fees with rates ranging from $350-$400 in other Establishment Clause cases based on the reasonable hourly rates in regions including Joplin, Missouri ($400 in 2016-2017), Baxter County, Arkansas ($300 in 2014-2015), Rankin, Mississippi ($325, 2015-2016), Raleigh, North Carolina ($190.50- $210 for work performed in 2015-2018, reflecting fee cap under the PLRA), and Carroll County, Maryland ($450 for work performed between 2013-2019, pending final approval). (Niose Decl. ¶9).

The hourly rates claimed in this case particularly reasonable given their extensive litigation experience in this complex area of constitutional law. (Miller Decl. ¶¶ 5-8), *see also* factor 9, discussed *infra.* These rates are wholly consistent with the rates awarded to attorneys within the Fourth Circuit.   *See Doe v. Kidd*, 656 Fed. Appx. 643, 654-55 (4th Cir. 2016) (holding that rates of $425.00 per hour for local lead counsel and $480.00 per hour for co-counsel with national reputation in civil rights law, in a case involved 'complex civil litigation); *South Carolinians for*

---

[6] Plaintiffs are seeking $250-$335 (based on the year worked) for Ms. Miller, $400.00 for Mr. Niose, and $250 per hour for Mr. Kozloski.

*Responsible Government v. Krawcheck*, No. 3:06-1640-MBS, 2012 WL 2830274 (D. S.D. July 9, 2012) (approving hourly rate of $425.00); *Uhlig v. Shirley*, 895 F.Supp.2d 707 (D. S.C. 2012) (approving hourly rates of $320.00 and $315.00); *Child Evangelism Fellowship of South Carolina v. Anderson Sch. Dist.*, No. 8:04-1866-HMH, 2007 WL 1302692, at *5 (D. S.C. May 2, 2007) (awarding rates ranging from $225 to $275 per hour in Establishment Clause case over ten years ago); *see also Rivers v. Ledford*, No. 4:09-CV-5-BO, 2009 WL 3459227, at *5 (E.D.N.C. Oct. 24, 2009) (awarding rates of $250 and $300 per hour to experienced attorneys in First Amendment litigation); *Republican Party of Minnesota v. White*, 456 F.3d 912, 920-21 (8th Cir. 2006) (holding that rates of $400 and $425 per hour for attorneys in a small, appellate firm specializing in First Amendment cases were reasonable in a case involving free speech for judicial candidates); *Blum v. Stenson*, 465 U.S. 886, 892-96 (1984); *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 178-79 (4th Cir. 1994); *Liberty Mut. Ins. Co. v. Employee Res. Mgmt., Inc.*, 176 F. Supp. 2d 510, 532-33 (D.S.C. 2001) (quoting Alexander S. By and Through Bowers v. Boyd, 929 F. Supp. 2d 925, 935 (D. S.C. 1995)).

### 6. Expectations at the Outset of Litigation

The fee in this case was entirely contingent, with both Local Counsel and the AHA attorneys representing Plaintiffs *pro bono*. This factor, too, weighs in favor of increasing the fee amount. *Daly*, 790 F.2d at 1078 n.9 (noting that factors "as contingency, can provide an appropriate basis for increasing the lodestar fee").

### 7. Time Limitations

As discussed *supra*, Plaintiffs' counsel all have limited resources that were dedicated to successfully pursuing this case at the expense of other deserving clients.

### 8. Results Obtained

Plaintiffs' attorneys unquestionably obtained the results the client intended to achieve in pursuing this action. This Court declared that both the Chapel Policy and Prayer Policy violate the Establishment Clause and awarded Plaintiffs' nominal damages on both claims and permanent injunctive relief on the Prayer Policy. Plaintiffs thus succeeded in all of their claims save for injunctive relief against the Chapel Policy, but that was solely on account of mootness, not the merits.

> It is settled that in order to be a prevailing party one need not win on every issue in the case. *Lytle v. Commissioners of Election of Union County*, 541 F.2d 421 (4th Cir. 1976). A party prevails if judgment is entered in his favor even though he did not sustain his entire claim. *Lytle*, 541 F.2d at 426, n. 6; 10 Wright & Miller, Federal Practice & Procedure, Civil, § 2667. The legislative history of § 1973L (e) states that in some circumstances fees may be allowed if the plaintiff prevails "on an important matter in the course of litigation, even when he ultimately does not prevail on all issues." Senate Report 94-295, 1975 U.S.Code Cong. & Admin.News, pp. 774, 808.

*Bly v. McLeod*, 605 F.2d 134, 137 (4th Cir. 1979).

Moreover, the nominal damages award against the Chapel Policy is not insignificant. "Nominal relief does not necessarily a nominal victory make.'" *Mercer*, 401 F.3d at 204 (citation omitted). "[W]hen determining whether attorney's fees are warranted in a nominal-damages case, courts should consider 'the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served' by the litigation." *Id.* (citation omitted).

In this case, Plaintiffs' counsel vindicated the rights of students under the First Amendment and the nominal damages awards "secur[ed] important social benefits." *Norsworthy v. Nguyen Consulting and Servs., Inc.*, 575 Fed. Appx. 247, 249 (5th Cir. 2014). By "making the deprivation of such rights actionable for nominal damages . . . the law recognizes the importance to organized society that those rights be scrupulously observed." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). The "rationale for the award of nominal damages being that federal courts should provide some

marginal vindication for a constitutional violation." *Price v. City of Charlotte*, 93 F.3d 1241, 1246 (4th Cir. 1996). It is "a way of communicating an important result in many cases: that the plaintiff proved a violation of his rights[.]" *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 460 (7th Cir. 2010). "Perhaps even more important to society, however, is the ability to hold a municipality accountable." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317-18 (2d Cir. 1999). Nominal damages also "encourage the municipality to reform the patterns and practices." *Id.*

Congress recognized that a plaintiff who obtains relief in a civil rights lawsuit "'does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance.'" *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (quoting H.R. Rep. No. 94-1558, at 2). Thus, Plaintiffs' fee, if anything, should be adjusted upward.

### 9. Experience, Reputation, and Ability of the Attorneys

#### A. Monica L. Miller

Monica L. Miller, lead counsel in this case and Senior Counsel for AHA,[7] has extensive experience with separation of church and state litigation and has appeared in federal courts across the country where she has successfully represented clients as well as the AHA in similar Establishment Clause cases. (Miller Decl.¶8). Ms. Miller recently argued an Establishment Clause case before the U.S. Supreme Court.

Ms. Miller has been a member of the California Bar since 2012, and the D.C. Bar since September 2013. She is also a member of the U.S. Supreme Court bar, and the bars for the U.S. Court of Appeals for the Third, Fourth, Fifth, Ninth, Tenth, Eleventh, and D.C. Circuit Courts, and the U.S. District Courts of California (Central District), Colorado, and Florida (Northern District). Ms. Miller is the Senior Counsel for the AHA and has worked for the organization since 2012

---

[7] Ms. Miller was recently promoted to Legal Director.

(Miller Decl. ¶2-3). She earned her J.D. *cum laude* from Vermont Law School in 2012 and her M.P.A. from Columbia University in 2009. (Miller Decl. ¶15-16).

Ms. Miller has served as a lead counsel in approximately twenty Establishment Clause cases. She has argued before the U.S. Supreme Court, the Fourth Circuit (twice), the Fifth Circuit, the Eleventh Circuit, and is arguing before the Ninth Circuit next week. Ms. Miller took the lead role in the research and briefing in the present case.

"An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, provided his ability corresponds with his experience." *Johnson v. Ga. Highway*, 488 F.2d at 718-19. *See Sec. Ins. Co. of Hartford v. Campbell Schneider & Assocs.* (*Security Insurance*), 481 F. Supp. 2d 496, 503-04 (D.S.C. 2007); *Alexander S.*, 929 F. Supp. at 938, 943-46.

Ms. Miller's extensive experience in Establishment Clause litigation warrants an enhanced rate. *E.g.*, *Baxter Cty.*, 2016 U.S. Dist. LEXIS 14371, at *5 (noting that Miller's "level of expertise and experience in the complicated areas of Establishment Clause and civil rights enforcement litigation that is *unusually high*") (emphasis added); *M.B.*, 2016 U.S. Dist. LEXIS 34717, at *14-17 ("it is undisputed that Ms. Miller and Mr. Niose brought specialized expertise in litigating First Amendment cases"). *See Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 319 (4th Cir. 1988) ("The district court [properly] followed *Blum*. It based its decision on prevailing market rates. It selected the upper end of these rates because the evidence disclosed that lawyers of comparable experience were compensated at the upper end of prevailing market rates."); *Snider v. Peters*, 928 F. Supp. 2d 1113, 1117 (E.D. Mo. 2013) ("Attorneys … [with the ACLU] have expertise in First Amendment litigation, a factor in support of higher fees."); *see also Republican Party of Minn. v. White*, 456 F.3d 912, 920-21 (8th Cir. 2006) (holding that rates of $400 and $425 per hour for attorneys in a small, appellate firm specializing in First Amendment cases were reasonable in a case involving

free speech for judicial candidates); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, C 06-4884 SI, 2011 WL 6092453 (N.D. Cal. Dec. 7, 2011) ("The Court finds that Ms. Stanfield's knowledge and skills in environmental law at the time she began working on this case are atypical for a first year associate, and that her specialized experience warrants a somewhat enhanced rate"); *Lighthouse Rescue Mission, Inc. v. City of Hattiesburg*, No. 2:12-CV-184-KS-MTP, 2014 U.S. Dist. LEXIS 56412, at *11-12 (S.D. Miss. April 23, 2014) (court augmented the requested rate from $275 to $325, calling it a "modest enhancement for [the attorney's] particular expertise"). Furthermore, the fees awarded to Ms. Miller go directly to AHA to support future *pro bono* civil rights cases.

### B.    David A. Niose

Mr. Niose has been practicing law full-time, primarily as a civil litigator, since 1990, and has served as legal director of the AHA since January 2014. He has spent a significant portion of his career developing an expertise in and litigating Establishment Clause jurisprudence. He is licensed to practice in Massachusetts and the District of Columbia, and has been admitted, via *pro hac vice* or regular admission, in a dozen other federal and state jurisdictions in cases involving the Establishment Clause or the rights of religious minorities. Mr. Niose has written extensively on issues relating to the Establishment Clause, including two books on secularism, and has argued before the Supreme Judicial Court of Massachusetts on constitutional issues relating to religion in government. Mr. Niose has also served as the president of the AHA for two terms, from 2009 to 2012, and as president of the Secular Coalition for America, a Washington-based advocacy organization.

Legal directors of nonprofit centers have been awarded comparable rates as Mr. Niose seeks. *See Islamic Shura Council of S. Cal. v. FBI*, 2011 U.S. Dist. LEXIS 143832 (C.D. Cal. Dec.

14, 2011) ("an hourly rate of $550 is reasonable in the Los Angeles legal market" for a deputy legal director for ACLU with awards and Ninth Circuit clerking experience); *Wirtz v. City of South Bend, Ind.*, No. 3:11-CV-325-RLM-CAN, 2012 U.S. Dist. LEXIS 22236 ("$400 per hour is a reasonable rate" for a legal director of a local ACLU branch); *Adm'x of the Estate of Conway v. Fayette County Children & Youth Servs.*, 2011 U.S. Dist. LEXIS 98501 (W.D. Pa. Aug. 31, 2011) ($425/hour for legal director of local ACLU branch); *Snider v. Peters*, 928 F. Supp. 2d 1113, 1117 (E.D. Mo. 2013) ("Attorneys . . . [with the ACLU] have expertise in First Amendment litigation, a factor in support of higher fees.").

### C.    Aaron J. Kozloski

Aaron Kozloski has extensive trial and appellate experience in both state and federal courts, including oral arguments before the South Carolina state and federal courts, in addition to participating in the briefing of countless cases before those courts and in motions and trials in both this District and the South Carolina State Courts.  Mr. Kozloski graduated from the University of South Carolina School of Law in 1997 and has since been admitted to and remains an active member of the South Carolina Bar.

He has over twenty years of legal experience in the District of South Carolina, and has distinguished himself through service to the local bar association and through various publications. (*See* Kozloski Decl.) This rate is well within the range adopted in *Child Evangelism Fellowship*, 2007 WL 1302692, at *5, and is below that awarded in *Smith*, 2008 WL 2627471, at *4, and *American Canoe*, 138 F. Supp. 2d at 742, for similarly experienced attorneys. Additionally, $250 per hour is Mr. Kozloski's normal hourly rate for out of-court legal services and represents a discount off his rate for in-court appearances and depositions. (*See* Kozloski Decl.¶9)

**10. Undesirability of the Case**

Unfortunately, when plaintiffs bring an Establishment Clause case, especially in the south, they are forced to make "revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Doe v. Stegall*, 653 F.2d 180, 185-86 (5th Cir. 1981). As the Court knows, Plaintiffs and their minor children were intimidated and did not want to be publicly identified with this litigation. For that reason, pseudonyms were used. The attorneys representing this case faced the same risk of "hostile public reaction." *See also Id.* at 186 ("the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to a Rankin County community hostile to the viewpoint reflected in plaintiffs' complaint.").

 "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant." *Johnson*, 488 F.2d at 719. "Suing a State over religion puts nothing in a plaintiff's pocket and can take a great deal out, and even with volunteer litigators to supply time and energy, the risk of social ostracism can be powerfully deterrent." *Van Orden v. Perry*, 545 U.S. 677, 747 (2005) (Souter, J., dissenting).

Such an undesirable case "favors an upward adjustment to the lodestar amount." *Doughtie v. City of Corinth, Miss.*, No. 3:93CV163-D-A, 1997 WL 786765, at *7 (N.D. Miss. Dec. 1, 1997) ("Representation of a client unpopular to many citizens in the town in which an attorney practices is not a desirable assignment, particularly when the asserted claims involve challenges to city policies or ordinances which are themselves popular."). *See Oxford,* 2002 WL 34188379 ("The court agrees with Plaintiffs that 'Establishment Clause cases are, by nature, extremely undesirable because, beyond their legal complexity and long duration, they expose Plaintiffs and their counsel to calumny . . . This case was no different.'"); *Ball v. Sch. Dist. of City of Grand Rapids*, 641 F. Supp. 1, 3 (W.D. Mich. 1986) ("These attorneys represented a group of concerned individuals in

18

a pro bono case that was most unpopular with the vast majority of people in their community. The constitutional principle that they sought to vindicate, the separation of church and state, was of central concern to those who founded our nation. Though that principle may periodically fall into disfavor with a particular majority, the Constitution is plainly an anti-majoritarian document designed to withstand the natural ebb and flow of social opinion.").

**11. Nature and Length of Professional Relationship**

Counsels' relationship with Plaintiffs began at the outset of this litigation.

**12. Attorney Fees Awards in Similar Cases**

Cases of this nature are fairly rare, but the cases cited above are fairly representative of complex, specialized litigation. The fees requested by Plaintiffs here are well within the range of fees for complex, specialized litigation in the civil rights and constitutional law areas. *See generally Doe v. Kidd*, 656 Fed.Appx. 643, 661 (4th Cir. Aug. 9, 2016) (unpublished) (awarding plaintiff's fees totaling $669,077.20 in case involving claims under the Medicaid Act, Americans with Disabilities Act, and various South Carolina state laws); *ACLU of Ky. v. McCreary Cty.*, No. 99-507-JBC, 2009 U.S. Dist. LEXIS 22206, at *20 (E.D. Ky. Mar. 13, 2009) (in Establishment Clause case, "the plaintiffs are entitled to an award of attorney fees in the amount of $393,798.00, and an award of costs in the amount of $8,133.34."); *Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cty.*, 2018 U.S. Dist. LEXIS 7334, at *5 (M.D. Fla. Jan. 17, 2018) ("The Court hereby awards Plaintiffs $195,300 in attorneys' fees, $6,600.73 in litigation expenses, and $13,180.61 in taxable costs, for a total award of $215,081.34."); *Hunter v. Beshear*, 2018 U.S. Dist. LEXIS 12090, at *55 (M.D. Ala. Jan. 25, 2018) ("The court also finds the parties' joint statement that plaintiffs' counsel expended 783.4 hours as of March 13 to be entirely convincing, given the court's own knowledge of the amount of time numerous attorneys have spent in court and in mediation. Based

on these findings, the lodestar figure amounts to the $374,062.50 provided for in the settlement agreement, of which the parties have negotiated a reduction to $275,000."); *Anderson v. City of Fort Pierce*, No. 14-14095-Civ, 2018 U.S. Dist. LEXIS 41106, at *12 (S.D. Fla. Mar. 9, 2018) (awarding $441,848 in attorneys' fees). (*See also, supra*, factors 5, and 9).

### 13. Costs and Expenses

As part of the attorney-fee award under § 1988, "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). In this case, American Humanist Association and Capitol Counsel incurred $9,766.01 in expenses as fully documented in the Bill of Costs and attached documentation filed herewith.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award $584,026.25 in attorneys' fees and $9,766.01 for other litigation costs and expenses to them and against Defendant in the full amount requested herein, plus any supplemental amounts necessary to establish the scope of relief required pursuant to this Court's ruling and to defend the right to entitlement thereto.

Date: August 1, 2019

             /s/*Aaron J. Kozloski*
Aaron J. Kozloski, Esq. DCID 09510
Capitol Counsel, LLC
P.O. Box 1996, Lexington, SC 29071
803-465-1400 fax 888-513-6021
aaron@capitolcounsel.us

Monica L. Miller (*pro hac vice*)
American Humanist Association
1821 Jefferson Place N.W.

Washington, D.C, 20036
 202-238-9088
mmiller@americanhumanist.org

David A. Niose (*pro hac vice*)
American Humanist Association
1821 Jefferson Place N.W.
Washington, D.C. 20036
202-238-9088
dniose@nioselaw.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing PLAINTIFFS' VERIFIED MOTION FOR

ATTORNEYS' FEES, COSTS, AND EXPENSES WITH INCORPORATED MEMORANDUM

IN SUPPORT to be served via the court's electronic filing system, and by first-class postage-

prepaid U.S. mail, on August 1, 2019 on the following counsel for Defendant:

**Thomas Kennedy Barlow**
Halligan Mahoney Williams Smith Fawley
and Reagle PA PO Box 11367
Columbia, SC 29211−1367
Tel: 803−254−4035
Fax: 803−771−4422
Email: tbarlow@hmwlegal.com

**John M Reagle**
Halligan Mahoney Williams Smith Fawley
and Reagle PA
PO Box 11367
Columbia, SC 29211−1367
Tel: 803−254−4035
Fax: 803−771−4422
Email: jreagle@hmwlegal.com

**Rodney Douglas Webb**
School District of Greenville County
301 Camperdown Way
Greenville, SC 29601
Tel: 864−355−8866
Email: rdwebb@greenville.k12.sc.us

/s/ Aaron J. Kozloski
Aaron J. Kozloski