IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| American Humanist Association, John Doe and Jane Doe, as parents and next friends of their minor child, Jill Doe, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 6:13-cv-2471-BHH |
| v. | ) ) | **ORDER** |
| Greenville County School District, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court upon Plaintiffs' verified motion for attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988. In their motion, Plaintiffs assert that they are the "prevailing party" for purposes of § 1988, and they request a total of $584,026.25 in attorneys' fees and $9,766.01 for other litigation costs and expenses. Defendant Greenville County School District ("Defendant" or "the District") opposes Plaintiffs' motion and asserts that (1) Plaintiffs are the "prevailing party" only in a technical sense; (2) if Plaintiffs are entitled to an award, then it should be reduced due to Plaintiffs' lack of overall success on the merits; and (3) any award should be reduced due to Plaintiffs' failure to justify the hours worked and the rates claimed.

## BACKGROUND

The procedural history of this case has been outlined extensively in the Court's prior orders and in the Fourth Circuit's opinion. (*See* ECF Nos. 96, 97, 108, 113, and 121.) For purposes of the instant motion, the Court simply notes that it previously determined that the school district's past prayer practice violated the Establishment Clause, entitling Plaintiffs

to $1 in nominal damages (ECF No. 97), and that the school district's use of Turner Chapel for Mountain View Elementary School's 2013 graduation violated the Establishment Clause, entitling Plaintiffs to $1 in nominal damages. (ECF No. 121 at 9.) In addition, the Court previously determined that, although the school district's *policy* regarding prayer at graduation ceremonies was constitutional as written, it was not constitutional as implemented because the district's *practices* continued to endorse certain religious activity. (ECF No. 143.) As a result, the Court entered a permanent injunction in favor of Plaintiffs. (*Id.*; *see also* ECF No. 161.)

## **DISCUSSION**

The Civil Rights Attorney's Fees Awards Act of 1976 provides in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 . . . , or title VI of the Civil Rights Act of 1964 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988. To qualify for attorney's fees under § 1988, a plaintiff must be a "prevailing party." Under the United States Supreme Court's "generous formulation" of that term, " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (*quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278-279 (1st Cir. 1978)). "[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Hewitt v. Helms*, 482 U.S. 755 (1987) (finding that Helms was not a "prevailing party" in his § 1983

2

action against state prison officials for alleged due process violations because he obtained no relief, and requiring a "prevailing party" to prove "the settling of some dispute which affects the behavior of the defendant towards the plaintiff"); *Rhodes v. Stewart*, 488 U.S. 1 (1988) (per curiam) (reaffirming that a judgment–declaratory or otherwise– constitutes relief for purposes of § 1988 only if it affects the behavior of the defendant towards the plaintiff); *and Texas State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (holding that, to be considered a prevailing party for purposes of § 1988 "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant"). As the Supreme Court explained more specifically in *Farrar v. Hobby*:

> Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, *Hewitt*, *supra*, 482 U.S., at 760, 107 S.Ct., at 2675, or comparable relief through a consent decree or settlement, *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. *See Hewitt*, *supra*, 482 U.S., at 764, 107 S.Ct., at 2677. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." *Rhodes*, *supra*, 488 U.S., at 4, 109 S.Ct., at 203. Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. *Garland*, *supra*, 489 U.S., at 792-793, 109 S.Ct., at 1494. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

506 U.S. 103, 111-12 (1992).

Here, Plaintiffs assert that they are the "prevailing party" because they succeeded on their challenges to the school district's practices of conducting graduation ceremonies in religious venues and endorsing prayer during graduation ceremonies. Defendants

3

assert, in response, that Plaintiffs are prevailing only "in a technical sense" and that an award of attorney's fees is not warranted under the circumstances.

After review, the Court agrees with Plaintiffs and finds that they are the "prevailing party" for purposes of § 1988. Contrary to Defendant's assertion, the Court does not find that Plaintiffs' victory is purely technical or *de minimis*; rather, it is clear to the Court that Plaintiffs, who obtained both nominal damages and specific declaratory and injunctive relief on the merits of their claims, have obtained a judgment vindicating their First Amendment rights and materially altering Defendant's policies and practices. Accordingly, the Court finds that Plaintiffs have crossed the threshold to a fee award of some kind. The next question, therefore, is the proper calculation of an award.

"In calculating an award of attorney's fees, a court must first determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 310 (4th Cir. 2008)). In determining what constitutes a reasonable number of hours and rate, the court in its discretion should consider the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243-44 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

"[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." *EEOC v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990). "After determining the lodestar figure, the 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.' " *Robinson*, 560 F.3d at 244 (quoting *Grissom*, 549 F.3d at 321). "Finally, '[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.' " *Id.* (quoting *Grissom*, 549 F.3d at 321) (internal quotation marks and citation omitted).

Here, Plaintiffs' counsel requests a total of $584,026.25 in attorney's fees and $9,766.01 for other litigation costs and expenses. The total attorney's fees are broken down as follows: (1) $451,163.75 for 1,436.2 hours of work performed by attorney Monica L. Miller at hourly rates varying from $250.00 to $335.00 depending on the year in which the work was performed (ECF No. 145-1 at 8); (2) $2,762.50 for 8.5 hours of work performed by attorney William Burgess at the hourly rate of $325.00 (*id.*); (3) $22,500.00 for 100 hours of work performed by attorney Katherine Paige at the hourly rate of $225.00; (4) $10,650.00 for 88.75 hours of work performed by paralegal Isabelle Oldfield at the hourly rate of $120.00 (*id.* at 9); (5) $35,500.00 for 88.75 hour of work performed by attorney David A. Niose at the hourly rate of $400.00 (ECF No. 145-2 at 5); and (3) $50,775.00[1] for 203.1 hours of work performed by local counsel Aaron J. Kozloski at the

---

[1] In his declaration, Kozloski states: "I am seeking compensation for 203.1 hours of work in this case at my customary rate of $250.00 hourly for out-of-court work," and he states that his "total six-year compensation sought, exclusive of costs, is $61,450.00." (ECF No. 145-3 at 4.) Importantly, however, the product of 203.1 hours of work at $250.00 per hour is $50,775.00, not $61,450.00, and it is not clear from Mr. Kozloski's declaration how he arrives at $61,450.00. Using $50,775.00 as the total amount of fees requested

hourly rate of $250.00 (ECF No. 145-3)  In support of their motion, Plaintiffs submit the declarations of Monica L. Miller, David A. Niose, and Aaron J. Kozloski, as well as a bill of costs.  (*See* ECF Nos. 145-1, 145-2, 145-3, and 145-4.)

After considering the relevant factors, the Court first notes that this case has spanned more than six years and has presented difficult questions from start to finish.  The case has required extensive legal briefing, and the Court has been impressed with the quality of legal work on both sides.  While Plaintiffs initially sought unlimited actual and punitive damages from the school district and two individual Defendants, the Doe Plaintiffs have been out of the case since 2015 and withdrew their claims against the individual Defendants.  Thus, the actual relief obtained by the case is different than the relief initially sought.  Nevertheless, counsel for Plaintiffs has obtained meaningful relief, not simply in the form of nominal damages but also in the form of permanent declaratory and injunctive relief.  While these factors do weigh in favor of an award of attorney's fees, the Court has concerns about the total amount of attorney's fees requested by Plaintiffs.

First, the Court finds that the evidence submitted by Plaintiffs' counsel falls short of establishing that all of the requested hourly rates are in line with the prevailing market rates in this community for the type of work performed.  As the Supreme Court has explained, fee applicants bear the burden of establishing that the rates they request are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Moreover, as the Fourth Circuit specified in *Plyler v. Evatt*: "**In addition to the attorney's**

---

by Kozloski, it appears that Plaintiffs actually seek a total fee award of $573,351.25, not $584,026.25.

**own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award**." 902 F.2d 273, 277 (4th Cir. 1990) (citations and internal quotation marks omitted) (emphasis added). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (citing *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988)). "In circumstances where it is reasonable to retain attorneys from other communities, however, the rates in those communities may also be considered." *Id.* (citing *Hanson*, 859 F.2d at 317).

The Court recognizes that "the determination of a market rate is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable," but the market rate nonetheless guides this Court's inquiry. Here, attorney Monica L. Miller, a 2012 law school graduate, seeks an hourly rate of $250.00 for work performed in 2013; an hourly rate of $325.00 for work performed in 2014 through the beginning of 2018; and an hourly rate of $335.00 for work performed in 2018 and 2019. Nowhere in her declaration does she explain the reason her hourly rate jumped $75.00 after only one year of practice and then remained the same until 2018, at which point it increased only $10.00. Nevertheless, even leaving that issue aside, her declaration does not offer evidence of the prevailing market rate in the community applicable to this litigation. Likewise, in Niose's declaration, he requests compensation at the hourly rate of $400.00, but he does not offer evidence of the applicable prevailing market rate in the community. Both Miller and Niose assert that attorneys for American Humanist Association

7

do not have standard rates because they represent clients on a pro bono basis, but again, this argument ignores Plaintiffs' counsels' burden of establishing that the rates they request are in line with the prevailing market rates in this community for the type of work performed. In fact, the only actual evidence submitted by Plaintiffs to support the prevailing market rates appears in Kozloski's declaration, where he asserts that he believes his requested hourly rate of $250.00 for out-of-court work "is consistent with, or potentially below the market rate for federal constitutional practitioners in the District." (ECF No. 145-3 at 4.) *See Plyler*, 902 F.2d at 277.

When Defendant pointed out in response to Plaintiffs' motion that Plaintiffs failed to submit evidence of the prevailing market rates in South Carolina other than counsels' own affidavits, Plaintiffs responded that they could not obtain other affidavits because there are no prevailing market rates in the Greenville region for Establishment Clause litigation. (ECF No. 157 at 14.) The Court finds Plaintiffs' argument specious, however, as it is clear that Plaintiffs could have offered additional evidence of prevailing market rates, at the very least, for similarly complex federal constitutional litigation, especially considering the fact that one of the declarations Plaintiffs did submit–that of local counsel Kozloski–specifically refers to $250.00 being consistent with or potentially below the prevailing market rate for federal constitutional practitioners in this District. *See Robinson v. Equifax Info. Servs., Inc.*, 560 F.3d 235, (4th Cir. 2009) (concluding that the district court abused its discretion by awarding the hourly rates requested in the absence of "satisfactory specific evidence of the prevailing market rates") (quoting *Plyler*, 902 F.2d at 277); *Doe v. Kidd*, 656 F. App'x 643, *654 (4th Cir. 2016) ("The evidence we have deemed competent to show prevailing market rates includes 'affidavits of other local lawyers who are familiar both with the skills

of the fee applicants and more generally with the type of work in the relevant community.'") (quoting *Plyler*, 902 F.3d at 277). Moreover, because Kozloski is an experienced South Carolina civil rights litigator with particular experience in Establishment Clause litigation, the Court is not convinced by Plaintiffs' out-of-state counsels' arguments that they are entitled to higher rates due to particular experience in Establishment Clause litigation. Here, despite the fact that other courts may have approved higher hourly rates for Miller and Niose, the Court finds that based on the actual evidence submitted by Plaintiffs, there is no reason to concluded that Kozloski's requested rate would not be appropriate for other counsel, or to otherwise conclude that Kozloski's declaration does not provide sufficiently specific evidence of the prevailing market rate for the type of work performed in this case.

As previously explained, Plaintiffs bear the burden of submitting specific evidence to establish the prevailing market rate in the community. Here, the specific evidence relevant to the prevailing market rate in the community appears in Kozloski's declaration, and in light of this evidence, the Court will apply $250.00 as the prevailing market rate to the hours requested by counsel, aside for the hours of attorney Katherine Paige, who requests a lower hourly rate of $225.00. Doing so results in a total of $467,287.50, broken down as follows: (1) $359,050.00 for work performed by Miller (1,436.2 hours at $250.00 per hour); (2) $2,125.00 for work performed by Burgess (8.5 hours at $250.00 per hour); (3) $22,500.00 for work performed by Paige (100 hours at the hourly rate of $225.00; (4) $10,650.00 for work performed by paralegal Oldfield (88.75 hours at $120.00 per hour); (5) $22,187.50 for work performed by Niose (88.75 hours at $250.00 per hour); and (6) $50,775.00 for work performed by Kozloski (203.1 hours at $250.00 per hour).

Next, however, this does not end the Court's inquiry because the Court agrees with

9

some of the concerns expressed by Defendant, particularly regarding Plaintiffs' counsels' use of quarter-hour increments in certain of the submitted time records.[2] These practices make counsels' records less precise, which in turn makes it more difficult for the Court to determine the reasonableness and accuracy of the total requested fees. After review, and in light of these concerns, the Court finds that in determining the appropriate number of hours to include in the lodestar calculation, the hours requested by Miller, Burgess, Paige, and Niose should be reduced by five percent to account for any excessive, redundant, or otherwise unnecessary billing. Reducing these hours results in a lodestar calculation of $446,466.00, broken down as follows: (1) $341,100.00 for work performed by Miller (1,364.4 hours at $250.00 per hour); (2) $2,025.00 for work performed by Burgess (8.1 hours at $250.00 per hour); (3) $21,375.00 for work performed by Paige (95 hours at the hourly rate of $225.00; (4) $10,116.00 for work performed by paralegal Oldfield (84.3 hours at $120.00 per hour); (5) $21,075.00 for work performed by Niose (84.3 hours at $250.00 per hour); and (6) $50,775.00 for work performed by Kozloski (203.1 hours at $250.00 per hour).

After determining the lodestar figure–hours expended multiplied by applicable rates–a court is obliged to "subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." *Grissom v. Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008). Here, Defendant urges the Court to impose a major deduction for time spent in furtherance of Plaintiffs' unsuccessful attempt to obtain an injunction prohibiting all public religious speech by any student under any circumstances. After review, however, the Court does not find

---

[2] The Court notes that Kozloski recorded his time in 1/10-hour increments.

any additional deduction warranted in light of the Court's previous findings outlined above and the totality of the circumstances of this case. As previously explained, although the actual relief obtained by the case is somewhat different than the relief initially sought, counsel for Plaintiffs obtained meaningful relief that effectively modifies the Defendant's behavior and vindicates Plaintiffs' First Amendment rights.

## **CONCLUSION**

The Court finds that Plaintiffs are the "prevailing party" and are entitled to an award of reasonable attorneys' fees, costs, and expenses pursuant to § 1988. For the specific reasons outlined herein, the Court **grants in part** Plaintiffs' motion (ECF No. 145) and awards Plaintiffs $446,466.00 in attorneys' fees and $9,776.01 for other litigation costs and expenses.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
The Honorable Bruce H. Hendricks
United States District Judge

April 14, 2020
Greenville, South Carolina